1

2

3

4              UNITED STATES DISTRICT COURT
              WESTERN DISTRICT OF WASHINGTON
5                        AT TACOMA

6  COMMERCIAL DEVELOPMENT
   COMPANY, a Missouri corporation;
7  ENVIRONMENTAL LIABILITY
   TRANSFER INC., a Missouri corporation; and          Case No. C07-5172RJB
8  WASH PAPER LLC, a Missouri Washington
   limited liability company as assign,                ORDER
9
                  Plaintiffs,
10
        v.
11
   ABITIBI-CONSOLIDATED INC., a foreign
12 corporation, JOHN DOES 1-10, officers
   directors, agents or employees of ABITIBI-
13 CONSOLIDATED, INC., individually and
   their martial communities composed thereof,
14
                  Defendants,
15 ——————————————————————————

16 VANESSA HERZOG, individually and her
   marital community,
17
                  Intervenor Plaintiff,
18      v.

19 COMMERCIAL DEVELOPMENT
   COMPANY, a Missouri corporation;
20 ENVIRONMENTAL LIABILITY
   TRANSFER INC., a Missouri corporation; and
21 WASH PAPER LLC, a Missouri Washington
   limited liability company as assign,
22
                  Defendants in Intervention.
23

24      This matter comes before the Court on Vanessa A. Herzog and her marital community's

25 Motion to Disqualify Foster Pepper as Counsel for Plaintiffs and For Sanctions.  Dkt. 41.  The Court

26 ORDER - 1

1  has considered the pleadings filed in support of and in opposition to the motion and the file herein.

2  Defendant Abitibi's Motion for Partial Summary Judgment for Dismissal of Plaintiffs' Third Cause of

3  Action (Dkt. 35) is also pending.

4  ## I.  FACTS AND PROCEDURAL BACKGROUND

5      Plaintiffs originally filed this action on March 21, 2007, in Pierce County, Washington

6  Superior Court, alleging Defendants wrongfully refused to sell Plaintiffs commercial real property

7  located in Steilacoom, Washington.  Dkt. 2-3.  The subject property is approximately 83 acres and

8  was a former paper mill site.  *Id*.  Plaintiffs filed a Notice of Lis Pendens in Pierce County Superior

9  Court and recorded the Notice of Lis Pendens in the county real property records on March 23,

10  2007.  Dkt. 1-2, at 8-15.  On April 4, 2007, Abitibi-Consolidated Inc. ("Abitibi") removed the case

11  to this Court.  Dkts. 1 and 2.

12      The First Amended Complaint alleges that in the spring of 2006, Abitibi, through its real

13  estate agent Vanessa Herzog (the moving party here), listed the subject property for sale.  Dkt. 25, at

14  2.  Plaintiffs allege that on June 1, 2006, as a result of "substantial negotiations" Plaintiffs submitted

15  an executed Letter of Intent to Abitibi.  *Id*. at 7.  Plaintiffs allege that the Letter of Intent was

16  "legally binding upon Purchaser and Seller subject only to negotiation and execution of a mutually

17  acceptable Purchase and Sale Agreement."  *Id*. at 9.  Plaintiffs allege that they were "formally

18  notified of [Plaintiff Environmental Liability Transfer's] selection as the purchaser of the property by

19  the agent of [Abitibi], Ms. Herzog, by email dated July 27, 2006."  *Id*. at 8.  Plaintiffs' allege that the

20  email states: "Environmental Liability Transfer, Inc. has been selected as the purchaser for the Abitibi

21  property.  The purchase price is $4,000,000.  I will be forwarding the signed letter of intent and

22  purchase and sale agreement shortly."  *Id*.  Plaintiffs allege that despite spending substantial sums on

23  due diligence and acting with good faith to complete the transaction, on February 16, 2007,

24  Defendants demanded additional compensation for the property.  *Id*. at 9-10.  Plaintiffs allege that

25  they recently discovered that Abitibi and "John Does were showing the property to prospective

26  ORDER - 2

1    purchasers and were in the process of negotiating a new agreement with another prospective

2    purchaser for $5,000,000." *Id.* at 10.  Plaintiffs make claims for breach of contract, promissory

3    estoppel, violations of the Abitibi Code of Ethics and Principles of Ethical Behavior pursuant to

4    Sarbanes Oxley Act of 2002, Pub. L. No. 107-204, 116 Stat. 745, violations of the implied covenants

5    of good faith and fair dealing, and violations of the Washington State Consumer Protection Act,

6    RCW 19.86.  Dkt. 25, at 11-13.  Plaintiffs seek injunctive relief, specific performance of the real

7    estate contract, and monetary damages. *Id.* at 13-14.

8        On October 1, 2007, Vanessa A. Herzog and her marital community's ("Herzog") Motion

9    to Intervene was granted.  Dkt. 37.  According to Herzog, her principal reason for seeking to

10   intervene was to defend herself and her marital community from any potential liability stemming from

11   the allegations in the First Amended Complaint that involve her.  Dkt. 34.  For example, the First

12   Amended Complaint alleges that Plaintiff was "formally notified of its selection as the purchaser of

13   the property by the agent of [Abitibi], Ms. Herzog, by email dated July 27, 2006."  Dkt. 25 at 8.

14   Herzog denies that this was the purpose of the email and seeks declaratory relief that her conduct did

15   not and cannot create any liability for herself and Abitibi.  Dkt. 32, at 3.  On October 3, 2007,

16   Herzog filed a Complaint in Intervention.  Dkt. 38.  She makes three claims. *Id.*  First, she seeks a

17   judicial declaration that "the conduct on the part of Ms. Herzog relied on by [Plaintiffs] cannot, as a

18   matter of law, create any liability on legal or equitable grounds for Ms. Herzog, GVA Kidder

19   Mathews or [Abitibi]" to Plaintiffs. *Id.*, at 2-3.  Secondly, she makes a claim for tortuous

20   interference, alleging that Plaintiffs here have "wrongfully and tortuously interfered with the sale of

21   the property to third parties causing damages to Ms. Herzog in an amount which will be proven with

22   specificity at trial." *Id.* at 3.  Lastly, Herzog makes a claim for damages and attorneys fees under

23   RCW 4.28.328. *Id.*

24       Herzog and her marital community are represented by Herzog's husband, Paul Brain.

25   Herzog is a real estate agent with GVA Kidder Mathews ("Kidder"), and was Abitibi's agent in the

26   ORDER - 3

1    transaction at issue.  Dkt. 32, at 1.  Herzog is a Senior Vice President and shareholder of Kidder.

2    Dkt. 43, at 2.  Linn Larsen, also an agent at Kidder, was Plaintiffs' agent in the transaction at issue

3    here.  Dkt. 51, at 4.  Herzog states that when she began working at Kidder, she was informed that

4    "legal representation in relation to [her] activities as a Kidder agent would be provided by Chris

5    Osborn."  Dkt. 43, at 2.  Chris Osborn is an attorney at Foster Pepper PLLC, and acts as lead

6    counsel to Kidder on various legal matters.  Dkt. 49.  Foster Pepper PLLC represents Plaintiffs here.

7         Herzog states that she has had a number of contacts with Mr. Osborn on legal issues that

8    arose as part of her provision of brokerage services to Kidder clients.  Dkt. 43, at 2.  She states that

9    she "understood that Mr. Osborn was representing [her] individually."  Dkt. 56, at 2.  She states that

10   she had has given him information which was communicated in confidence.  *Id*.  Herzog states that

11   some of the confidential information and advice bears directly on the issues in this litigation.  *Id*.

12   Herzog indicates that Mr. Osborn did not tell her that his representation was limited to Kidder.  *Id*.

13   She indicates that pursuant to Kidder's "Policy Manual," as it pertains to commission issues, "legal

14   fees accrued in the collection of fees shall be shared by [Kidder] and the agent in the same proportion

15   as the commission is shared."  *Id*. at 3.  Herzog states that under the "Policy Manual" she is

16   responsible for payment of the $25,000 deductible which is applied to the attorneys fees incurred in

17   defending a claim against her arising from the provision of brokerage services.  *Id*.  She states that

18   she has personally paid for all the legal services provided to her by Mr. Osborn and Foster Pepper.

19   *Id*.  Herzog expresses great concern over the fact that Plaintiff's first interrogatory responses

20   indicated that she was one of the "John Doe Defendants" against whom Plaintiff was asserting a

21   claim for a million dollars, although a second set of responses removes her name.  Dkt. 41.  Foster

22   Pepper sent an apology for including her name on the responses.  Dkt. 49, at 2-3.

23        Mr. Osborn states that he investigated whether his firm should accept representation of

24   Plaintiffs here.  Dkt. 49.  He understood that "notwithstanding the dispute between the buyer and

25   seller, there was no assertion that [Kidder] or its agents had done anything wrong and [he] could

26   ORDER - 4

1    discern no potential claim from the facts relayed to [him]." *Id.*, at 2. He states that he represents

2    Kidder, and in that capacity has advised most, if not all, of Kidder's employees and agents, such as

3    Herzog, who is an independent contractor. *Id.*, at 3. He states that the only advice he has ever given

4    Herzog was in her "capacity as an agent/independent contractor for [Kidder] on matters that are

5    unrelated to the subject matter of this litigation." *Id*. He does not believe that he represents her

6    personally, and does not believe that he possesses confidential information which is material to the

7    present suit. *Id*. at 4.

8         Paul Brain filed a Declaration in support of the instant Motion to Disqualify. Dkt. 42. He

9    states that "**to his knowledge**" Mr. Osborn has "represented and advised Ms. Herzog on issues

10    pertaining specifically to the scope of her duties and responsibilities as a seller's agent . . . ." Dkt.

11    42, at 4 (*emphasis added*). Brain states that he recalls sitting in on a number of telephone

12    conversations where Mr. Osborn was "advising Ms. Herzog on commission issues" . . . and attended

13    a meeting addressing a purchaser's allegations that "communications by Ms. Herzog created an

14    obligation to sell on the part of her customer." *Id*.

15         In the instant motion to disqualify counsel, Herzog argues that:  1) she is a current client or

16    was a client of Mr. Osborn, and, therefore, of Foster Pepper, 2) Foster Pepper's representation of

17    Plaintiffs violates the Washington Rules of Professional Conduct governing actual and potential

18    conflicts of interests, 3) sanctions should be imposed on Foster Pepper or the individual attorneys

19    involved, and 4) sanctions should be awarded under Fed. R. Civ. P. 26 against Mr. Mullaney for

20    serving the Interrogatory Responses which mistakenly included Herzog. Dkt. 41.

21         Plaintiffs argue in Response to this motion to disqualify their counsel that when they first

22    approached Mr. Thoreson of Foster Pepper to represent them, they did not believe that they had any

23    claims against Kidder or its' agents. Dkt. 48, at 3. Foster Pepper argues that Plaintiffs waived any

24    potential conflict. Dkt. 48, at 3. They point to the letter in the record entitled "Waiver of Potential

25    Conflict in Abitibi Matter"signed by Plaintiffs here. Dkt. 50, at 41-44. Foster Pepper also states that

26    

1   they anticipate Kidder will execute the waiver letter sent it in the near future.  Dkt. 49, at 2.

2   Moreover, they argue that 1) Herzog is not a client of Foster Pepper or Mr. Osborn, 2) Mr. Osborn

3   represents Kidder as an organization, but does not represent her, a constituent, under RPC 1.13,

4   even if he is in possession of confidential information, 3) Herzog fails to meet Washington's two-

5   pronged requirements for disqualification, and 4) Herzog's request for personal sanctions against Mr.

6   Mullaney should be denied.  Dkt. 48.

7                                   **II.    DISCUSSION**

8           **A.    MOTION TO DISQUALIFY**

9           The Court first refers to the local rules regulating the conduct of members of its bar in

10  determining whether an attorney's representation of a particular client violates the attorney's ethical

11  responsibilities.  *Paul E. Iacono Structural Engineer, Inc. v. Humphrey,* 722 F.2d 435, 439 (9th Cir.

12  1983); *Avocent Redmond Corp. v. Rose Electronics,* 491 F. Supp. 2d 1000 (W.D.Wash. 2007).

13  Local General Rule 2(e), "Standards of Professional Conduct," provides that:

14          In order to maintain the effective administration of justice and the integrity of the
            Court, attorneys appearing in this District shall be familiar with and comply with the
15          following materials ("Materials") (1) The Local Rules of this District, including the
            Local Rules that address attorney conduct and discipline; (2) the Washington Rules of
16          Professional Conduct, as promulgated, amended and interpreted by the Washington
            State Supreme Court (the "RPC"), and the decisions of any court applicable thereto;
17          ... In applying and construing these Materials, this Court may also consider the
            published decisions and formal and informal ethics opinions of the Washington State
18          Bar Association, the Model Rules of Professional Conduct of the American Bar
            Association and Ethics Opinions issued pursuant to those Model Rules, and the
19          decisional law of the state and federal courts.

20          Herzog argues here that she is, or at least was, a client of Mr. Osborn and Foster Pepper, and

21  that Foster Pepper's representation of Plaintiffs here violates RPC 1.7 and RPC 1.10.  Dkts. 41, and

22  54.  The first issue that must be addressed is whether Herzog is a current or former client of Foster

23  Pepper.

24

25

26  ORDER - 6

1
      1.   <u>Herzog as a Client</u>

2
     In the state of Washington, "[t]he essence of the attorney/client relationship is whether the

3
attorney's advice or assistance is sought and received on legal matters." *In re Disciplinary*

4
*Proceeding Against Egger*, 152 Wash. 2d 393, 410 (2004) (*citing Bohn v. Cody*, 119 Wash. 2d 357

5
(1992)). The relationship need not be formalized in a written contract; rather it may be implied from

6
the parties' conduct. *Id.* "Whether a fee is paid is not dispositive, for the existence of the

7
relationship turns largely on the client's subjective belief that it exists." *Id.* "The client's subjective

8
belief, however, does not control the issue unless it is reasonably formed based on the attending

9
circumstances, including the attorney's words or actions." *Bohn*, at 363.

10
     Herzog is, at least, a former client of Chris Osborn and Foster Pepper. She sought and

11
received legal advice from Mr. Osborn on issues at least indirectly related by subject matter to this

12
litigation. Dkts. 43, at 2 and 56, at 2. She clearly thinks that she was represented by Mr. Osborn

13
and Foster Pepper, and personally paid for their services, even though Mr. Osborn may have been

14
unaware of the source of his fees. Dkts. 43, at 2 and 56, at 3. Her belief that she is represented by

15
Mr. Osborn is reasonable in the circumstances.

16
     Although Herzog is a Senior Vice President and shareholder of Kidder, (and so a constituent

17
under Comment One to RPC 1.13), parties are quick to point out that she is not an employee, but an

18
independent contractor. Dkts. 43, at 2 and 49, at 3. Her status as an officer and owner of Kidder

19
leaves open the question of her current relationship with Foster Pepper, which continues to represent

20
Kidder.

21
     Mr. Osborn argues that he does not represent Herzog personally, but represents Kidder as a

22
organization, citing RPC 1.13. Under RPC 1.13(a), "[a] lawyer employed or retained by an

23
organization represents the organization acting through its duly authorized constituents." While

24
recognizing that under certain circumstances a lawyer who represents an organization does not

25
represent the directors, officers, employees, members, shareholders or other constituents of that

26
ORDER - 7

1   organization individually, subject to the provisions of RPC 1.7 (governing conflicts of interest), RPC

2   1.13(g) does not prohibit dual representation.  Moreover, the circumstances here lead to the

3   conclusion that Mr. Osborn did, in fact represent Herzog as well as Kidder, and may continue to be

4   Herzog's lawyer, through Kidder, for some matters.

5                    2.      Washington  Rule of Professional Conduct 1.7

6          RPC 1.7 provides that:

7          (a) A lawyer shall not represent a client if the representation involves a concurrent
           conflict of interest.  A concurrent conflict of interest exists if: (1) the representation of
8          one client will be directly adverse to another client; or (2) there is a significant risk
           that the representation of one or more clients will be materially limited by the lawyer's
9          responsibilities to another client, a former client or a third person or by a personal
           interest of the lawyer.
10
           (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph
11         (a), a lawyer may represent a client if: (1) the lawyer reasonably believes that the
           lawyer will be able to provide competent and diligent representation to each affected
12         client; (2) the representation is not prohibited by law; (3) the representation does not
           involve the assertion of a claim by one client against another client represented by the
13         lawyer in the same litigation or other proceeding before a tribunal; and (4) each
           affected client gives informed consent, confirmed in writing (following authorization
14         from the other client to make any required disclosures).

15  Under RPC 1.10(a), "while lawyers are associated in a firm, none of them shall knowingly represent

16  a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or

17  1.9, unless the prohibition is based on a personal interest of the prohibited lawyer and does not

18  present a significant risk of materially limiting the representation of the client by the remaining

19  lawyers in the firm."  Disqualification prescribed by RPC 1.10 (a) may be waived by the affected

20  client under the conditions stated in Rule 1.7.  RPC 1.10 (c).

21                    a.      *Existence of Concurrent Conflict of Interest*

22         There is a concurrent conflict of interest in Foster Pepper's representation of Plaintiffs here,

23  and it's representation of Kidder and Herzog.  Herzog is suing the Plaintiff here for declaratory

24  relief: "the conduct on the part of Ms. Herzog relied on by [Plaintiffs] cannot, as a matter of law,

25  create any liability on legal or equitable grounds for Ms. Herzog, [Kidder] or [Abitibi]" to Plaintiffs.

26  ORDER - 8

1    Dkt. 38, at 2-3.  Secondly, she makes a claim for tortuous interference, alleging that Plaintiffs here

2    have "wrongfully and tortuously interfered with the sale of the property to third parties causing

3    damages to Ms. Herzog in an amount which will be proven with specificity at trial." *Id.* at 3.  Lastly,

4    Herzog makes a claim for damages and attorneys fees under RCW 4.28.328.  *Id.*  Although there is

5    no evidence in the record of the current commission sharing agreement between Kidder and Herzog,

6    surely Kidder would benefit from Herzog's success in her case.  It is, then, to one of Foster Pepper's

7    client's (Plaintiffs') benefit to beat Herzog on her claims, and to the other Foster Pepper's client's

8    (Kidder's) benefit if Herzog is successful.  Accordingly, the representation of one client would be

9    directly adverse to the interests of the other.  Moreover, Mr. Osborn assured Herzog that if Plaintiffs

10   here decided to assert a claim against Kidder or any of its agents relating to this transaction, Foster

11   Pepper would withdraw from the case.  Dkt. 42, at 8.  Now that Herzog is asserting a claims against

12   Plaintiffs, the same reasoning should have applied.  A concurrent conflict of interest exists.

13                        b.    *Waiver*

14        Foster Pepper argues that even if a conflict of interest exists, that the clients have signed

15   waivers.  The record indicates that two of the three clients involved did not in fact sign waivers.

16   Herzog has not signed a waiver.  The waiver in the record from Kidder is for discovery conflicts.

17   Dkt. 49, at 6.  Not all of the clients have given their informed consent as is required under RPC

18   1.7(b).

19                  3.    *Kurbitz* Factors

20        Foster Pepper argues that Herzog fails to meet Washington's two pronged requirements for

21   disqualification citing *Kurbitz v. Kurbitz,* 77 Wn.2d 943, 947 (1970) and *RWR Management Inc. v.*

22   *Citizens Realty Company*, 133 Wn.App. 265 (2006).  Dkt. 48, at 10.  On the outset, it is unclear

23   how the current Rules of Professional Conduct relate to the rule announced in these cases.  The

24   current version of RPC 1.7 became effective on September 1, 2006, after the decision in *RWR*

25   *Management*.  In any event, the Washington Supreme Court in *Kurbitz* in 1970 and Division III of

26   ORDER - 9

1  the Washington Court of Appeals in *RWR Management* in 2006, held that Washington courts

2  consider two factors in attorney disqualification questions arising from alleged conflict of interest.

3  First, courts consider if "the matters embraced within the pending suit involving an attorney's former

4  client are substantially related to matters on which the attorney or someone in his association

5  previously represented the former client." *RWR Management*, at 280 (*citing Kurbitz* at 947).

6  Second, courts consider "if the attorney in the present litigation did not formerly represent the

7  adverse client, but had access to confidential information which is material to the present suit, then

8  the attorney should disqualify himself." *Id.*

9       Assuming this test still applies, Herzog has met the requirements.  Even if she is considered a

10  former client, she has sufficiently alleged that matters embraced within this case are substantially

11  related by subject matter to issues on which Mr. Osborn has given her advice, meeting the first prong

12  of the test.  According to the parties, one of the issues in this matter will be the consequences of

13  Herzog's actions, as an agent, on Abitibi.  Herzog states that she has consulted  Mr. Osborn "on a

14  number of issues including issues relating to the scope of her duties and responsibilities as an agent."

15  Dkt. 56, at 2.  Secondly, she alleges that Mr. Osborn has access to confidential information which is

16  material to the present suit, meeting the last prong of the test.  *Id.*  Herzog has successfully met the

17  requirements of the test announced in *Kurbitz v. Kurbitz,* 77 Wn.2d 943, 947 (1970).

18              3.   Conclusion

19       The Motion for the Disqualification of Plaintiffs' counsel should be granted.  Unless

20  compelling circumstances are presented, a corporation must be represented by an attorney in federal

21  court. *See In re Highley*, 459 F.2d 554, 555-56 (9th Cir.1972); *Taylor v. Knapp*, 871 F.2d 803, 806

22  (9th Cir.1989); *Shell Petroleum v. Graves*, 709 F.2d 593, 594 (9th Cir.1983); *Rowland v. California

23  Men's Colony*, 506 U.S. 194, 202 (1993).  Accordingly, Plaintiffs should be given thirty days to find

24  a new attorney.

25

26  ORDER - 10

1

2

**B.     MOTIONS FOR SANCTIONS**

      1.     <u>Failure to Voluntarily Withdraw</u>

Herzog moves for monetary sanctions against Foster Pepper and the members of that firm for failing to voluntarily withdraw from their representation of Plaintiffs.  Dkt. 41.  Local General Rule 2(f)(3)(A) provides that an attorney may be subject to disciplinary action for violations of the Standards of Professional Conduct.  As side from directing Foster Pepper to withdraw as Plaintiffs' counsel, this Court will take no further disciplinary action against Foster Pepper or any of the individual lawyers involved.  The record does not support the award of monetary sanctions and Herzog's motion should be denied.

      2.     <u>Sanctions Regarding Answers to Interrogatories</u>

Herzog, for the second time, moves for sanctions against Mr. Mullaney at Foster Pepper. Dkts. 34 and 41.  She alleges that the first set of Interrogatory Responses which named her as a "John Doe Defendant" was certified by Mr. Mullaney to be in compliance with Fed. R. Civ. P. 26(g). *Id.*  Although Herzog acknowledges that after pointing out that she was included as a "John Doe Defendant" Plaintiffs' counsel amended the answer and removed her name, she still argues that she is entitled to sanctions. *Id.* at 3-4.

Fed. R. Civ. P. 26(g)(1) provides that every disclosure made pursuant to Fed. R. Civ. P. 26 made by a party represented by an attorney shall be signed by at least one attorney of record" and that signature "constitutes a certification that to the best of the signer's knowledge, information, and belief, formed after reasonable inquiry, the disclosure is complete and correct as of the time it is made."  "If without substantial justification a certification is made in violation of the rule, the court . . . . shall impose upon the person making the certification . . . an appropriate sanction."

Here, no sanction is warranted, and Herzog's motion for sanctions should be denied.  The record indicates that Herzog's name was inadvertently included in the answers to interrogatories and once discovered, Foster Pepper amended the answers and apologized.  The answer in question was

ORDER - 11

1   intended to explain Plaintiffs' theory of the case, and did not appear to have an improper purpose.

2   No further action is required.

3          **C.      MOTION FOR SUMMARY JUDGMENT**

4          Defendant Abitibi's Motion for Partial Summary Judgment for Dismissal of Plaintiffs' Third

5   Cause of Action (Dkt. 35) should be re-noted to January 4, 2008 in order to give Plaintiffs' new

6   counsel an opportunity to file a supplemental pleadings, if they wish.  An additional response, if any,

7   should be filed by December 31, 2007, and an additional reply, if any, should be filed by January 3,

8   2008.

9          **D.      CIVILITY**

10          Remaining parties are again warned to conduct themselves according to the highest

11   professional standards.  Name calling will not be tolerated.  Additionally, based on the pleadings

12   submitted by Brain (Herzog's lawyer and husband), it is unclear whether Brain will be a witness in

13   this case.  Equally unclear are the implications of RPC 3.7 on his representation of her.  As should

14   now be apparent, the Rules of Professional Conduct apply.

15          **E.      JURISDICTION**

16          The Court again notes that, at this stage, it appears the Court has a basis for diversity

17   jurisdiction pursuant to 28 U.S.C. § 1332.  However, the Court notes that the caption in the First

18   Amended Complaint lists Plaintiff Wash Paper LLC as a "Missouri Washington limited liability

19   company," the Notice of Removal alleges that Wash Paper LLC is a Missouri corporation.  Plaintiffs

20   should clarify this issue for the Court and move to amend the First Amended Complaint if necessary.

21   Trial is set to begin in the end of May 2008.

22   /

23   /

24   /

25

26   ORDER - 12

### III.   ORDER

Therefore, it is hereby **ORDERED**, that:

- Intervenors' Motion to Disqualify Foster Pepper as Counsel for Plaintiffs and for Sanctions (Dkt. 41) is **GRANTED**, as to the disqualification of Foster Pepper as Counsel for Plaintiffs, and **DENIED**, as to the Motions for Sanctions;

- Plaintiffs have thirty days from the date of this order to find new counsel;

- Defendant Abitibi's Motion for Partial Summary Judgment for Dismissal of Plaintiffs' Third Cause of Action (Dkt. 35) is **RE-NOTED** to **January 4, 2008**.  An additional response, if any, shall be filed by December 31, 2007, and an additional reply, if any, shall be filed by January 3, 2008;

- The Clerk of the Court is instructed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 15th day of November, 2007.

ROBERT J. BRYAN
United States District Judge

ORDER - 13