UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

COMMERCIAL DEVELOPMENT
COMPANY, a Missouri corporation;
ENVIRONMENTAL LIABILITY
TRANSFER INC., a Missouri corporation; and
WASH PAPER LLC, a Missouri Washington
limited liability company as assign,

        Plaintiffs,

        v.

ABITIBI-CONSOLIDATED INC., a foreign
corporation, JOHN DOES 1-10, officers
directors, agents or employees of ABITIBI-
CONSOLIDATED, INC., individually and
their martial communities composed thereof,

        Defendants,

———————————————————

VANESSA HERZOG, individually and her
marital community,

        Intervenor Plaintiff,

v.

COMMERCIAL DEVELOPMENT
COMPANY, a Missouri corporation;
ENVIRONMENTAL LIABILITY
TRANSFER INC., a Missouri corporation; and
WASH PAPER LLC, a Missouri Washington
limited liability company as assign,

        Defendants in Intervention.

Case No. C07-5172RJB

ORDER GRANTING MOTION FOR
PARTIAL SUMMARY JUDGMENT

This matter comes before the Court on Defendant Abitibi Consolidated Inc.'s ("Abitibi")

ORDER - 1

1   Motion for Partial Summary Judgment Dismissal of Plaintiffs' Third Cause of Action, (Dkt. 35)

2   Plaintiffs' Motion for a Continuance Under Fed. R. Civ. P. 56(f) (Dkt. 46), and Plaintiffs' Motion to

3   Strike the Declaration of Kellye Testy (Dkt. 46).  The Court has considered the pleadings filed in

4   support of and in opposition to these motions and the file herein.

5                           **I.       FACTS AND PROCEDURAL BACKGROUND**

6           Plaintiffs originally filed this action on March 21, 2007, in Pierce County, Washington

7   Superior Court, alleging Defendants wrongfully refused to sell Plaintiffs commercial real property

8   located in Steilacoom, Washington.  Dkt. 25, at 10-11.  The subject property is approximately 84

9   acres and was a former paper mill site.  *Id.*  Plaintiffs make claims for breach of contract, promissory

10  estoppel, violations of the Sarbanes Oxley Act of 2002, Pub. L. No. 107-204, 116 Stat. 745,

11  violations of the implied covenants of good faith and fair dealing, and violations of the Washington

12  State Consumer Protection Act, RCW 19.86.  *Id.* at 11-13.  Plaintiffs' third cause of action, and the

13  subject of the summary judgment motion (Dkt. 35), more specifically alleges: Abitibi and the John

14  Does' "actions as they relate to the Property and this transaction constitute violations of the [Abitibi]

15  Code of Ethics and Principles of Ethical Behavior, and in turn, constitute violations of the Sarbanes

16  Oxley Act of 2002."  *Id*. at 12.  Plaintiffs seek specific performance of the parties' alleged real estate

17  contract, injunctive relief, and monetary damages.  *Id*. at 13-14.

18          Plaintiffs filed a Notice of Lis Pendens in Pierce County Superior Court and recorded the

19  Notice of Lis Pendens in the county real property records on March 23, 2007.  Dkt. 1-2, at 8-15.

20  Plaintiffs were represented by Foster Pepper PLLC.  Dkt. 2-3.  On April 4, 2007, Abitibi-

21  Consolidated Inc. ("Abitibi") removed the case to this Court.  Dkts. 1 and 2.

22          On October 1, 2007, Venessa Herzog's Motion to Intervene was granted.  Dkt. 37.  Herzog

23  was Abitibi's real estate agent in the transaction at issue.  Dkt. 32, at 1.  On November 15, 2007,

24  Herzog's Motion to Disqualify Plaintiffs' Counsel was granted.  Dkt. 62.  Plaintiffs were given thirty

25  days to secure new counsel.  *Id*.  On December 14, 2007, Jeffrey Ring and Travis Hall filed a

26  ORDER - 2

1   Substitution of Counsel and appeared on behalf of Plaintiffs.  Dkt. 64.

2       The instant Motion for Partial Summary Judgment was noted for consideration on October

3   19, 2007.  Dkt. 35.  The Motion was renoted to January 4, 2008 after Plaintiffs' counsel was

4   disqualified.  Dkt. 62.  It is now ripe for consideration.  In the Motion, Abitibi argues that Plaintiffs'

5   third cause of action, made pursuant to the Sarbanes-Oxley Act of 2002 ("SOA"), should be

6   dismissed because: 1) there is no express private right of action under Section 406 of SOA, 2) no

7   private right of action should be implied for Section 406, and 3) to the extent that Plaintiffs are not

8   suing under Section 406 of SOA, no separate cause of action exists to sue for violations of a code of

9   ethics.  Dkt. 35.  Plaintiffs respond, arguing that: 1) a private right of action should be implied under

10  SOA for violations of a corporation's code of ethics, and 2) Congress has shown that it could

11  expressly limit SOA private rights of action and no such limitation appears in Section 406.  Dkt. 46.

12      Plaintiffs also move for a Fed. R. Civ. P. 56(f) continuance and move to strike the

13  Declaration of Seattle University Law School Dean Kellye Testy.  Dkt. 46, at 18-19.  Abitibi replies,

14  arguing that: 1) the universal refusal to imply a private right of action in other sections of SOA

15  underscores why no private right of action should be implied here, 2) none of the factors in *Cort v.*

16  *Ash,* 422 U.S. 66 (1975), favor creation of an implied right of action, 3) Abitibi's statements about

17  Section 406 do not render Section 406 meaningless, 4) Plaintiffs fail to demonstrate that a

18  continuance is appropriate under Rule 56(f), and 5) Plaintiffs' Motion to Strike should be denied.

19  Dkt. 57.

20      This opinion will first address whether a private right of action should be implied under

21  Section 406 of SOA, then will determine whether Plaintiff should be granted a continuance, and

22  lastly, whether Dean Testy's Declaration should be stricken.

## II.    DISCUSSION

### A.    SUMMARY JUDGMENT STANDARD

25      Summary judgment is proper only if the pleadings, depositions, answers to interrogatories,

26  ORDER - 3

1   and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

2   any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

3   56(c).  The moving party is entitled to judgment as a matter of law when the nonmoving party fails

4   to make a sufficient showing on an essential element of a claim in the case on which the nonmoving

5   party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  There is no

6   genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of

7   fact to find for the non moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

8   574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply

9   "some metaphysical doubt.");  *See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a

10  material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a

11  judge or jury to resolve the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477

12  U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th

13  Cir. 1987).

14        The determination of the existence of a material fact is often a close question.  The court

15  must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a

16  preponderance of the evidence in most civil cases.  *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv.,*

17  *Inc.*, 809 F.2d at 630.  The court must resolve any factual issues of controversy in favor of the

18  nonmoving party only when the facts specifically attested by that party contradict facts specifically

19  attested by the moving party.  The nonmoving party may not merely state that it will discredit the

20  moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the

21  claim.  *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*. Conclusory, non

22  specific statements in affidavits are not sufficient, and missing facts will not be presumed.  *Lujan v.*

23  *Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

24        **B.      PRIVATE RIGHT OF ACTION UNDER SOA**

25        Congress must create private rights of action to enforce federal law.  *Alexander v. Sandoval,*

26  ORDER - 4

1    532 U.S. 275, 286-7 (2001)(*internal citations omitted*).

2           The judicial task is to interpret the statute Congress has passed to determine whether
             it displays an intent to create not just a private right but also a private remedy.
3           Statutory intent on this latter point is determinative.  Without it, a cause of action
             does not exist and courts may not create one, no matter how desirable that might be
4           as a policy matter, or how compatible with the statute.

5    *Id.*, at 286-7(*internal citations omitted*).  The Supreme Court created a four part test to determine

6    whether a federal statute creates a private right of action for a particular plaintiff.  *Cort v. Ash,* 422

7    U.S. 66, 78 (1975).  While there is some authority suggesting that the four-factor *Cort v. Ash* test is

8    no longer the exclusive means by which to determine when a private cause of action exists, courts

9    still apply this test in making this determination.  *Opera Plaza Residential Parcel Homeowner's*

10   *Ass'n v. Hoang,* 376 F.3d 831, 834 (9th Cir. 2004)(*internal quotations and citations omitted*).  The

11   *Cort* factors are:

12          First, is the plaintiff one of a class for whose especial benefit the statute was enacted-
             that is, does the statute create a federal right in favor of the plaintiff? Second, is there
13          any indication of legislative intent, explicit or implicit, either to create such a remedy
             or to deny one? Third, is it consistent with the underlying purpose of the legislative
14          scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one
             traditionally delegated to state law, so that it would be inappropriate to infer a cause
15          of action based solely on federal law?

16   *Cort*, 422 U.S. at 78 (*internal citations and quotation marks omitted*).  The burden is on the

17   Plaintiffs to show that a private right of action exists.  *Opera Plaza* at 835 (*internal citation*

18   *omitted*).

19                    1.       Members of the Class for Whose Benefit the Statute was Enacted

20          "In applying the first *Cort* factor, courts look to whether the plaintiffs that claim a cause of

21   action exists are specifically mentioned as beneficiaries in the statute."  *Opera Plaza* at 835 (*internal*

22   *citation omitted*).  SOA provides that it is an act to "protect investors by improving accuracy and

23   reliability of corporate disclosures made pursuant to the securities laws, and for other purposes."

24   Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204; *See also* H. R. Conf. Rep. 107-610, July 24,

25   2002.  Shareholders appear to be the primary beneficiaries of SOA.  Plaintiffs are not shareholders of

26   ORDER - 5

1  Abitibi, but third parties involved in a contract dispute.  Plaintiffs have not shown that they are

2  members of a class for whose benefit the statute was enacted.

3          2.        Legislative Intent to Create a Private Right of Action

4          In the *Cort* analysis, the second factor-whether Congress intended to provide the plaintiff

5  with a private right of action-is the key inquiry in this calculus.  *Opera Plaza* at 835 (*internal citation*

6  *omitted*).  In determining whether Congress intended to create the private right of action asserted,

7  the Court must first turn to the text of the statute itself.  *Touche Ross & Co. v. Redington,* 442 U.S.

8  560, 568 (1979).  The legislative history of an act can also be a source of evidence of Congressional

9  intent to create a private right of action or remedy.  *Burgert v. Lokelani Bernice Pauahi Bishop*

10  *Trust*, 200 F.3d 661, 664 (9th Cir. 2000).

11          a.     *Statutory Text*

12          Nothing in the express language of Section 406 implies that Congress intended a private right

13  of action for this portion of SOA.  Section 406 of SOA provides,

14      (a) **Code of ethics disclosure**.  The Commission shall issue rules to require each
   issuer, together with periodic reports required pursuant to section 78m(a) or 78*o*(d)

15  of this title, to disclose whether or not, and if not, the reason therefor, such issuer has
   adopted a code of ethics for senior financial officers, applicable to its principal financial officer and

16  comptroller or principal accounting officer, or persons performing similar functions.

17      (b) **Changes in codes of ethics**. The Commission shall revise its regulations
   concerning matters requiring prompt disclosure on Form 8-K (or any successor

18  thereto) to require the immediate disclosure, by means of the filing of such form,
   dissemination by the Internet or by other electronic means, by any issuer of any

19  change in or waiver of the code of ethics for senior financial officers.

20      (c) **Definition**. In this section, the term "code of ethics" means such standards as are
   reasonably necessary to promote--

21          (**1**) honest and ethical conduct, including the ethical handling of actual or
   apparent conflicts of interest between personal and professional relationships;

22          (**2**) full, fair, accurate, timely, and understandable disclosure in the periodic
   reports required to be filed by the issuer; and

23          (**3**) compliance with applicable governmental rules and regulations.

24      (d) **Deadline for rulemaking**.  The Commission shall--

25          (**1**) propose rules to implement this section, not later than 90 days after July

26  ORDER - 6

1   30, 2002; and
2   **(2)** issue final rules to implement this section, not later than 180 days after July 30,
    2002.

3   The Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, § 406, 116 Stat. 745, 789-90 (codified at 15

4   U.S.C. § 7264).  This section of SOA enables the Securities and Exchange Commission to

5   promulgate rules regarding the disclosure of a publically traded corporation's code of ethics, if any.

6   It makes no mention of a cause of action based on a violation of the code of ethics.  The text of

7   Section 406 of SOA does not provide any basis upon which to conclude Congress intended a private

8   right of action and a private remedy for Plaintiffs here.

9                          b.       *Legislative History*

10          Plaintiffs point to three portions of SOA's legislative history to support their position that it

11  was Congress's intent to create a private right of action for violations of a company's code of ethics.

12  Dkt. 46, at 13-15.  Plaintiffs relate that Rep. Jackson-Lee, stated "[a] critical feature of corporate

13  ethics is the understanding of the business organization as a moral actor.  Moral actor means that the

14  company can be held responsible and accountable from an ethical perspective. . ." *Id*. (*citing* 148

15  Cong. Rec. H5462-02, H5472 (2002) Conf. Rep. on H. R. 3763, statement of Rep. Jackson-Lee).

16  Plaintiffs identify statements by Sen. Kyl, who noted that "[a]ll Americans have a stake in a healthy

17  business climate, and we know that health depends on having an ethical business climate. . . . In the

18  haze of morally gray areas, corporate executives have come right up against the limits of what is

19  acceptable behavior, and in several cases, have gone beyond it." *Id*. (*citing* 148 Cong. Rec. S6636-

20  01, 6642 (2002)(S. consideration of S. 2763, statement of Sen. Kyl)).

21          Neither of these two comments support Plaintiffs' position that Congress intended an implied

22  right of action and remedy under Section 406 of SOA for violations of a company's code of ethics.

23  These statements reiterate the importance of ethical codes and make vague references to holding

24  companies "responsible" from an ethical perspective.  They are not sufficient to establish that

25  Congress intended to give "judicially enforceable rights" to parties such as Plaintiffs here.  *See*

26  ORDER - 7

1  *Burgert v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 664 (9th Cir. 2000)(holding no

2  congressional intent to imply a private right of action for native Hawaiians in either the Native

3  Hawaiian Education Act, 20 U.S.C. § 7901, or the Native Hawaiian Health Care Act, 42 U.S.C. §

4  11701).

5      Plaintiffs also cite comments made by Rep. Melvin Watt months before SOA was passed:

6      So one of the things I particularly feel strongly about is that there is a very important
       role for private litigants to enforce rights in this context.  We can't give responsibility
7      solely to the SEC and say you have absolute authority to do this, and if you don't do
       it, then nobody is going to have the authority to do it.  Our whole accountability
8      system in this country is based on the rights of individuals to hold corporations and
       other individuals accountable when they feel like they have been wronged.  So, at a
9      minimum, we need to put some of those provisions in the bill to provide for private
       litigants to protect their own rights, and that I think is a hallmark of the way our
10     system should work.

11  Dkt. 46, at 15.  Significantly, Rep. Watt's comments began,

12     I want to start by saying something complimentary about the Chairman's bill. It clearly
       moves in the right direction. It would be a substantial improvement over nothing, and
13     I think we should keep that in mind, but I hope that this hearing today and the markup
       itself, if we are going immediately to a markup, will result in a deliberation about
14     improvements or revisions that can be made to the bill to make it stronger.

15     I think there are a number of instances in which I would prefer to have stronger
       language, stronger provisions in a number of respects. The Chairman's bill punts just a
16     whole panoply of issues to the Securities and Exchange Commission or other bodies.
       Maybe some of that is necessary and desirable to get more information and input over
17     time, but I think there are some basic principles that the legislative process has already
       agreed upon or should agree upon to put into the bill before we punt the rest of it to
18     the SEC for further study.

19  The Corporate and Auditing Accountability, Responsibility and Transparency Act of 2002 Hearings

20  before the Committee on Financial Service, 107th Cong. (March 13, 2002).  Rep. Watt's comments

21  indicate that he wanted a role for private litigants, however, it is unclear from the record and Plaintiff

22  does not further elaborate on whether Rep. Watt was discussing Section 406.  The final version of

23  SOA does contain some private rights of action.  For example, Section 306 permits an action by a

24  company, or by shareholders derivatively, if any of the directors or officers trade equity securities

25  during pension blackout dates.  Codified at 15 U.S.C. § 7244(a).  The fact that Congress chose to

26  ORDER - 8

1   include a private right of action and remedy in Section 306, shows that "when Congress wished to

2   provide a private damages remedy, it knew how to do so and did so expressly." *Touche Ross*, 442

3   U.S. at 572 (declining to imply a private right of action and remedy in a section which contained no

4   express provision when other sections of the law explicitly provided for private causes of action).

5   Moreover, expression of a single congressman's desire of what he would like included in a bill is not

6   dispositive of Congressional intent on the matter.  The simple fact is that despite Rep. Watt's

7   comments, no private right of action or remedy was inserted in SOA's Section 406.

8          Plaintiffs argue that a failure to imply a private right of action here, where the text is silent,

9   would render superfluous other provisions of the SOA where Congress expressly limited private

10  causes of action. Dkt. 46.  At best, this argument renders Congressional intent on Section 406

11  ambiguous because the reverse is also true:  Congress expressly included private rights of action

12  elsewhere in SOA, so to imply one here would render those portions superfluous.

13                     3.     Conclusion

14

15         Plaintiffs have failed to carry their burden to establish that Congress intended a private cause

16  of action and remedy for violations of SOA's Section 406.  That the first two *Cort* factors weigh

17  against finding a private right of action is dispositive of the inquiry. *Opera Plaza* at 837 (*internal

18  citation omitted*).  Defendant Abitibi's Motion for Partial Summary Judgment (Dkt. 35) should be

19  granted, and Plaintiff's third cause of action, made pursuant to SOA, should be dismissed.

20  **C.     MOTION FOR CONTINUANCE**

21         On October 29, 2007, Plaintiffs filed their Response to this Motion and moved for a Fed. R.

22  56(f) continuance to allow further discovery. Dkt. 46.  This Motion should be denied as moot.

23  Plaintiffs failed to show that a private right of action should be implied under SOA.  No further

24  discovery is needed on this issue.

25  **D.     MOTION TO STRIKE**

26  ORDER - 9

1    Plaintiffs moved to strike the Declaration of Dean Kellye Testy as her testimony relates to an

2    issue of law - whether there a private right of action should be implied under SOA.  Dkt. 46.

3    Plaintiff's Motion to Strike should be granted.  "Expert testimony is not proper for issues of law.

4    Experts interpret and analyze factual evidence.  They do not testify about the law...." *Crow Tribe of*

5    *Indians v. Racicot,* 87 F.3d 1039, 1045 (9th Cir. 1996)(*internal citations omitted*).

6                                          **III.     ORDER**

7    Therefore, it is hereby, **ORDERED** that:

8    •        Defendant Abitibi Consolidated Inc.'s Motion for Partial Summary Judgment

9             Dismissal of Plaintiffs' Third Cause of Action (Dkt. 35) is **GRANTED**, Plaintiffs'

10            third cause of action brought pursuant to Sarbanes Oxley Act of 2002 is

11            **DISMISSED**;

12   •        Plaintiffs' Motion for a Continuance Under Fed. R. Civ. P. 56(f) (Dkt. 46) is

13            **DENIED**;

14   •        Plaintiffs' Motion to Strike the Declaration of Kellye Testy (Dkt. 46) is **GRANTED**;

15   •        The Clerk of the Court is directed to send uncertified copies of this Order to all

16            counsel of record and to any party appearing *pro se* at said party's last known

17            address.

18   DATED this 8th day of January, 2008.

19

20   _____
     ROBERT J. BRYAN

21   United States District Judge

22

23

24

25

26   ORDER - 10