UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| COMMERCIAL DEVELOPMENT COMPANY, a Missouri corporation; ENVIRONMENTAL LIABILITY TRANSFER INC., a Missouri corporation; and WASH PAPER LLC, a Missouri Washington limited liability company as assign,<br><br>Plaintiffs,<br><br>v.<br><br>ABITIBI-CONSOLIDATED INC., a foreign corporation, and VANESSA HERZOG, individually and her marital community,<br><br>Defendants, | Case No. C07-5172RJB<br><br>ORDER ON ABITIBI'S MOTION FOR PARTIAL SUMMARY JUDGMENT DISMISSING SPECIFIC PERFORMANCE CLAIMS |

VANESSA HERZOG, individually and her marital community,

        Intervenor Plaintiff,

v.

COMMERCIAL DEVELOPMENT COMPANY, a Missouri corporation; ENVIRONMENTAL LIABILITY TRANSFER INC., a Missouri corporation; and WASH PAPER LLC, a Missouri Washington limited liability company as assign,

        Defendants in Intervention.

This matter comes before the Court on Abitibi's Motion for Partial Summary Judgment Dismissing Specific Performance Claims. Dkt. 104. The Court has considered the pleadings filed in support of and in opposition to the motion and the file herein.

ORDER - 1

1  **I.  FACTS AND PROCEDURAL BACKGROUND**

Plaintiffs originally filed this action on March 21, 2007, in Pierce County, Washington Superior Court, alleging Abitibi-Consolidated Inc. ("Abitibi") wrongfully refused to sell Plaintiffs commercial real property located in Steilacoom, Washington. Dkt. 1; Dkt. 25, at 10-11. The subject property is approximately 84 acres and was a former paper mill site. *Id*.

**A. RELEVANT EVENTS**

According to Plaintiffs, the events leading up to this suit began in the spring of 2006. Dkt. 13. After making several offers to buy the subject property from Abitibi, on May 30, 2006, Mark Hinds, a Vice President for Environmental Liability Transfer Inc., flew to Montreal, Canada.. Dkt. 13 at 1-2. Mr. Hinds met with the following employees and officers of Abitibi: Alice Minville, In House Legal Counsel; Jim Gartshore, Vice President; Bruno Trembley, Senior Vice President; and Nicole Roy, Manager Environmental Audits. *Id*. at 2. Mr. Hinds presented a Letter of Intent. *Id*. According to Mr. Hinds, the parties from Abitibi told him that a "deal could probably be worked out with a few changes to the Letter of Intent." *Id.* Mr. Hinds states that he made the requested changes, signed, and emailed the updated Letter of Intent (Dkt. 109-4) to Abitibi on June 1, 2006. *Id*. For ease of reference the Letter of Intent is attached hereto. Parties do not dispute that the expiration date of the Letter of Intent was extended to the end of June 2006.

Mr. Hinds, Plaintiffs' Vice President, states that between the May 30, 2006 meeting and July 27, 2006 he "had several telephone conversations with Jim Gartshore, Vice President of Abitibi, regarding the agreement between Plaintiffs and [Abitibi] regarding the sale and purchase of the former Abitibi paper and pulp mill." Dkt. 76, at 2. Mr. Hinds states that, based on his conversations with Mr. Gartshore, he "understood that Abitibi accepted the terms of the LOI but was merely experiencing bureaucratic delays in returning the signed copy to memorialize their acceptance." *Id*.

ORDER - 2

Although Abitibi never signed the Letter of Intent, on July 27, 2006, Mr. Hinds received an email from Abitibi's real estate agent, Intervenor Venessa Herzog, stating,

> Environmental Liability Transfer, Inc. has been selected as the purchaser for the Abitibi property. The purchase price in $4,000,000. I will be forwarding the signed letter of intent and purchase and sale agreement shortly. Mark Hinds is the contact person for the selected purchaser for the Abitibi plant. Please send a copy of the 80% survey and title report to Mark and ELT's General Counsel, Mike McCartney.

Dkt. 11, at 6. The email was addressed to a title company, LandAmerica American Title. Dkt. 11, at 6. Mr. Hinds and Mr. McCartney (of Plaintiff Environmental Liability Transfer, Inc.) and Ms. Minville and Mr. Gartshore (of Defendant Abitibi), were copied. *Id*.

Plaintiffs state that they "took this email at face value, and understood that [they] had been selected as purchaser." Dkt. 76, at 2. Michael McCartney, Vice President and In House Counsel for Plaintiff Environmental Liability Transfer, stated that Plaintiffs believed that this email constituted an e-signature on the Letter of Intent. Dkt. 11 at 2. According to Mr. Hinds, (Plaintiffs' Vice President) who is a real estate agent licensed in the state of Missouri, it was his experience in the real estate industry for "real estate agents to communicate acceptance of their principals to land sale transactions and thereby bind such principals to the deal." Dkt. 76, at 3. Mr. Hinds states that Plaintiffs' "primary contact during the negotiations period for this transaction was Ms. Herzog, and she conveyed numerous legal documents to [them]." *Id*. Mr. Hinds states that "[a]t no point did Abitibi inform me that Ms. Herzog did not have the authority to bind Abitibi by her words or actions." *Id*.

Mr. Hinds (Plaintiffs' Vice President) states further that he had "approximately 10-20 conversations with Mr. Gartshore regarding the status of the deal between June 2006 and February 2007. During these conversations, he expressed frustration that the Purchase and Sale Agreement had not yet been finalized and assured me that we had a deal with Abitibi." Dkt. 76, at 3. Plaintiffs allege that their belief that they had a deal was reaffirmed on August 16, 2006, when Mr. Hinds

ORDER - 3

received an email from Ms. Minville which stated that "they were working on an updated Asset Purchase Agreement." *Id.* at 3.

On January 19, 2007, Ms. Minville of Abitibi sent a Purchase and Sale Agreement to Mr. McCartney, In-House Counsel for Plaintiffs. Dkt. at 109-2, at 1. In the email (the Purchase and Sale Agreement was an attachment) Mr. Minville cautions that "this document has not been reviewed by all of my internal clients, and Washington State counsel, and therefore, remains subject to their comments." *Id*. This document was never signed by either party. Dkt. 109-2, at 17. The property is referred to by county tax parcel number, and states that it is more particularly described in the attached **Exhibit A**. *Id.*, at 2 (*emphasis in original*). "Exhibit A" is blank except for the title "Exhibit A." *Id.* at 20. No "Buyer" is identified. *Id*. at 2 and 17.

On February 5, 2007, Mr. McCartney, in House Counsel for Plaintiffs, sent Ms. Minville of Abitibi an email entitled "Draft Purchase Agreement" which stated "[p]lease find a clean and marked copy showing minor changes to your draft. We look forward to finalizing in the near future." Dkt. 109-3, at 1. This document added language in the "4.5 Release and Indemnity" section of the Purchase and Sale Agreement. *Id.*, at 10 and 37. The additional language was:

> [P]rovided, that, the foregoing release and indemnity shall not apply to the Excluded Matters. Excluded Matters means: (i) the presence of Hazardous Materials on property other than the Property (off-site); but only to the extent such Hazardous Materials did not migrate off site from the Property; (ii) worker health claims (including but not limited to claims or damages for workers' compensation, personal injury, disease or death) by current or former Seller employees and/or current or former employees of any predecessors-in-interest to Seller arising or resulting from pre-Closing injury or exposure; (iii) any past unpaid costs and/or expenses incurred by Seller or any predecessors-in-interest to Seller, including but not limited to any oversight costs or expenses incurred by or owed to any governmental authority prior to the date hereof and requested in writing (the "Past Unpaid Costs") to the extent of any such Past Unpaid Costs which are Known to Seller and not disclosed to Buyer; (iv) Natural Resource Damage claims arising or resulting from events or conditions that occurred or existed solely and exclusively prior to the Closing Date, which claims are known to Seller and not disclosed to Buyer, and (vi) any other claims by third parties arising or resulting from or alleged to have arisen or resulted from operation of the Property by Seller or any predecessors-in-interest to Seller prior to the Closing Date, which are known to Seller and not disclosed to Buyer (the "Operational Claims").

ORDER - 4

1  Dkt. 109-3, 10 and 37.  In the provision entitled "8.4 Closing Costs and Prorations," Abitibi's
2  language which required that the "[b]uyer shall pay any sales tax applicable to the sale" was stricken.
3  *Id*. at 42.  The remaining language reads, "any closing expenses of the sale shall be paid by Buyer and
4  Seller in accordance with customary practice as determined by the Title Company."  *Id.*  This
5  document was also unsigned.  *Id*. at 18 and 46.  The property is again referred to by county tax
6  parcel number, and states that it is more particularly described in the attached **Exhibit A**.  *Id*., at 2
7  and 29. (*emphasis in original*).  "Exhibit A" is again blank except for the title "Exhibit A."  *Id*. at 20
8  and 48.  No "buyer" is identified.  *Id*. at 2, 18, 29, and 46.

9  In the later part of February 2007, Plaintiffs learned that Abitibi was entertaining new offers
10 for the property.  Dkt. 11, at 3.  On March 20, 2007, Lin Larson, Plaintiffs' real estate agent sent an
11 email to Ms. Herzog acknowledging that Plaintiffs were aware Abitibi had a $5,000,000 offer for the
12 property and made a new offer of $4,100,000.  Dkt. 47, at 139.  That offer was declined and this suit
13 followed.

14 **B.     ALLEGATIONS IN THE COMPLAINT AND PROCEDURAL HISTORY**

15 The Second Amended Complaint alleges that Abitibi, through its real estate agent, Vanessa
16 Herzog, listed the subject property for sale.  Dkt. 97, at 2.  Plaintiffs allege that, on June 1, 2006, as
17 a result of "substantial negotiations," Plaintiffs submitted an executed Letter of Intent to Abitibi.  *Id*.
18 at 4.  Plaintiffs allege that the Letter of Intent was "legally binding upon Purchaser and Seller subject
19 only to negotiation and execution of a mutually acceptable Purchase and Sale Agreement."  *Id*. at 9.
20 Plaintiffs allege that Herzog represented in the July 27, 2006 email that Plaintiff had been "selected as
21 the purchaser of the Abitibi property."  *Id*. at 5.  Plaintiffs allege that on February 16, 2007,
22 Defendants demanded additional compensation for the property.  *Id*. at 6.  Plaintiffs allege that
23 Abitibi and Herzog had been showing the property to other prospective purchasers without
24 informing Plaintiffs or the other purchasers.  *Id*.  Plaintiffs allege that on February 27, 2007, Herzog
25 forwarded an email containing Mr. Paul Brain's (her husband and a Washington attorney) legal

26 ORDER - 5

opinion of the enforceability of the Letter of Intent to Abitibi. *Id*. at 7. Plaintiffs allege that Herzog forwarded the email to persuade Abitibi to breach its contractual obligations to Plaintiff under the color of a legal opinion. *Id*.

Plaintiffs make claims for breach of contract, promissory estoppel, violations of the implied covenants of good faith and fair dealing, fraud, and injunctive relief against Abitibi. *Id.* at 8-12. Plaintiffs make a fraud claim against Herzog. *Id*. at 10-11. Plaintiffs' claim for violations of the Sarbanes Oxley Act of 2002, Pub. L. No. 107-204, 116 Stat. 745, was dismissed with prejudice upon Defendant Abitibi's Motion for Partial Summary Judgment. Dkt. 77. Plaintiffs seek specific performance of the parties' alleged real estate contract, injunctive relief, and monetary damages. Dkt. 97 at 13-14. The pending motion only attacks the prayer for specific performance.

Plaintiffs filed a Notice of Lis Pendens in Pierce County Superior Court and recorded the Notice of Lis Pendens in the county real property records on March 23, 2007. Dkt. 1-2, at 8-15. Plaintiffs were represented by Foster Pepper PLLC. Dkt. 2-3. On April 4, 2007, Abitibi removed the case to this Court. Dkts. 1 and 2.

On October 1, 2007, Ms. Herzog and her marital community's Motion to Intervene in this matter was granted. Dkt. 37. Ms. Herzog and her marital community are represented by Ms. Herzog's husband, Paul Brain. Intervenor Plaintiffs filed a Complaint in Intervention on October 3, 2007. Dkt. 38. They make three claims. *Id.* First, they seek a judicial declaration that "the conduct on the part of Ms. Herzog relied on by [Plaintiffs] cannot, as a matter of law, create any liability on legal or equitable grounds for Ms. Herzog, GVA Kidder Mathews or [Abitibi]" to Plaintiffs. *Id.*, at 2-3. Secondly, they make a claim for tortuous interference, alleging that Plaintiffs here have "wrongfully and tortuously interfered with the sale of the property to third parties causing damages to Ms. Herzog in an amount which will be proven with specificity at trial." *Id.* at 3. Lastly, Ms. Herzog makes a claim for damages and attorneys fees under RCW 4.28.328. *Id*.

On November 15, 2007, Intervenor Plaintiffs' Motion to Disqualify Plaintiffs' Counsel was

ORDER - 6

granted. Dkt. 62. Plaintiffs were given thirty days to secure new counsel. *Id*. On December 14, 2007, Jeffrey Ring and Travis Hall filed a Substitution of Counsel and appeared on behalf of Plaintiffs. Dkt. 64. On February 5, 2008, Intervenor Plaintiff's Motion for Partial Summary Judgment was denied. Dkt. 95.

### C.  PENDING MOTION

Abitibi moves for summary dismissal, with prejudice, of Plaintiffs' specific performance claims. Dkt. 104. Abitibi argues that: 1) the Statute of Frauds prevents specific enforcement of the purchase and sale agreement, 2) specific performance is only available when the parties have reached agreement on all material terms, and the parties did not reach agreement on the following material terms: identity of the purchaser, the scope of the environmental indemnity, responsibility for the sales tax, and 3) the Letter of Intent does not create an agreement to sell the property or otherwise support a specific performance remedy. *Id.*

Plaintiffs' position is that "there are genuine issues of material fact in dispute regarding whether the plaintiffs have a right to the remedy of specific performance, specifically with regard to the following issues (1) whether plaintiffs and defendant had an enforceable contract; (2) whether the terms of that enforceable contract were definite and certain; and (3) whether specific performance is necessary because damages alone will not adequately compensate the Plaintiffs." Plaintiffs also make a public policy argument. Plaintiff's Opposition Brief (Dkt. 114, p.8).

A review of the record shows that there are no material issues of fact from which the court could conclude that Plaintiffs had a contract enforceable in specific performance.

## II.  DISCUSSION

### A.  SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56(b) a "party against whom relief is sought may move at any time, with or without supporting affidavits, for summary judgment on all or part of the claim." Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and

ORDER - 7

affidavi0ts, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."); *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. *Id*. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*. Conclusory, non specific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

### B.     STATUTE OF FRAUDS AND SPECIFIC PERFORMANCE

#### 1.     Purchase and Sale Agreement

The first issue to be determined is whether any Purchase and Sale Agreement complies with

ORDER - 8

the Statute of Frauds such that it could be enforced in a manner which would require Abitibi to convey the property to Plaintiffs.

In the state of Washington, "[e]very conveyance of real estate, or any interest therein ... shall be by deed." RCW 64.4.010. The deed must be in writing and include the acknowledged signature of the party bound thereby. RCW 64.4.020. Moreover, "in order to comply with the statute of frauds, a contract or deed for the conveyance of land must contain a description of the land sufficiently definite to locate it without recourse to oral testimony, or else it must contain a reference to another instrument which does contain a sufficient description." *Bigelow v. Mood,* 56 Wn.2d 340, 341(1960).

In order to specifically enforce a purchase and sale agreement, the agreement must comply with the Statute of Frauds. *Key Design Inc. v. Moser*, 138 Wash.2d 875(1999)(real estate purchase and sale agreement had to meet Statute of Frauds and was unenforceable in the absence of an adequate legal description). The various versions of the Purchase and Sale Agreement in the record fail to comply with the Washington Statute of Frauds. It is uncontested that the last two versions of the Purchase and Sale Agreement, sent from Abitibi to Plaintiffs on January 19, 2006, and sent from Plaintiffs to Abitibi on February 5, 2007, were not signed. Dkt. 109-2, at 17, Dkt. 109-3, at 18 and 46. No Purchase and Sale Agreement meets the requirements of the Washington Statue of Frauds. RCW 64.4.020. Accordingly, none of the versions of the Purchase and Sale Agreement in the record may be specifically enforced.

### 2. Letter of Intent

Plaintiff argues that the Letter of Intent is an agreement to convey, not a conveyance, and thus not necessarily subject to the Statute of Frauds. Dkt. 114, at 10. Plaintiff also argues that Washington courts are moving away from the holding in *Martin v. Seigel*, 35 Wash.2d 223(1950), citing *Firth v. Lu*, 146 Wash.2d 608 (2002). *Id.*

ORDER - 9

In *Martin,* the Washington Supreme Court affirmed the trial court's dismissal of an action for specific performance of a contract to sell real property. *Id*. The *Martin* court held that the earnest money agreement, through which plaintiff sought specific performance, must comply with the Statute of Frauds. *Id*. *Martin*'s holding was reaffirmed recently by the Washington State Supreme Court. *Key Design Inc*., at 875. The agreement in *Martin* did not meet the Statute's requirement regarding legal descriptions. *Id*., at 228-229. The Court there held that the agreement set forth in the earnest money agreement was, accordingly, unenforceable. *Id*. at 229. The facts in *Firth* were distinguishable from the facts in *Martin* and *Key Design Inc*. In *Firth*, people who lived in an apartment building were offered an opportunity to buy shares in a company whose only asset was the apartment building. *Firth* at 615. The *Firth* Court held that stock in a corporation whose only asset is real property is not an interest in real property. *Id*. at 616. The Court concluded, then, that the agreement between the parties need not comply with the Statute of Frauds. *Id*.

There is no meaningful distinction between the agreements in *Martin* and *Key Design Inc*. and the Letter of Intent here insofar as application of the Statute of Frauds is concerned. They all purported to be agreements relating to the conveyance of property. In order to be specifically enforced, then, the Letter of Intent, like the Purchase and Sale Agreement in *Key Design Inc*., must comply with the statute of frauds. As a federal court sitting in diversity, this court is bound to apply state law. *State Farm Fire and Casualty Co. v. Smith*, 907 F.2d 900, 901 (9th Cir. 1990). Plaintiff hints that the Washington law may be changing, but federal courts sitting in diversity must take state law as it is, not as it may develop to be.

The Letter of Intent does not contain a signature on behalf of Abitibi. Dkt. 109-4, at 2. In order to comply with the Statute of Frauds and be entitled to specific performance, Abitibi must agree, in writing, to be bound. RCW 64.4.020. Plaintiff asserts that the July 27, 2006 email from Ms. Herzog to the title company, and copied to parties at Abitibi and Plaintiffs, constituted an electronic signature binding Abitibi.

ORDER - 10

No reasonable jury could conclude that this email constitutes a written signature to the Letter of Intent. A question of fact may be determined as a matter of law where reasonable minds could reach but one conclusion. *Keystone Land and Development Co. v. Xerox Corp.*, 152 Wn.2d 171, 178 n.10 (2004). The email clearly contemplates the existence of a "signed letter of intent and purchase and sale agreement." The email does not indicate that it operates as an acceptance of the Letter of Intent. The Letter of Intent does not contain Abitibi's written signature, and therefore does not comply with the Statute of Frauds.

### C. ENFORCEMENT OF THE LETTER OF INTENT "TO MOVE FORWARD TO CLOSING"

Plaintiffs take the position that the Letter of Intent bound the parties "to move forward to closing." Dkt. 108, at 43. Plaintiffs state that they want the court to "move forward or have the parties move forward towards [sic] developing or completing the mutually acceptable purchase and sale agreement. And if that cannot be accomplished, then it would fall back to the binding letter of intent." *Id*. at 46.

An agreement to agree is an agreement to do something which requires a further meeting of the minds of the parties and without which the agreement would not be complete. *Sandeman v. Sayres,* 50 Wash.2d 539, 541-42 (1957).

To the extent that Plaintiffs are arguing that the Letter of Intent operates as an agreement that the parties will agree on a Purchase and Sale Agreement (an "agreement to agree"), and that it should be specifically enforced as such, is unavailing. In Washington, agreements to agree are unenforceable. *Sanderman* at 541-42 ; *Keystone Land & Development Co. v. Xerox Corp.*, 152 Wash.2d 151, 176 (2004).

To the extent that Plaintiffs argue that the Letter of Intent is a contract to negotiate, and should be specifically enforced, their argument fails. "In a contract to negotiate, parties can contract to negotiate, the parties exchange promises to conform to a specific course of conduct during negotiations, such as negotiating in good faith, exclusively with each other, or for a specific period of

ORDER - 11

time." *Keystone Land* at 176. A "contract to negotiate is breached only when one party fails to conform to the specific course of conduct agreed upon. No Washington court has directly addressed whether a contract to negotiate is independently enforceable." *Id.*

The Letter of Intent does not contain any specific courses of negotiating conduct, such as "negotiating in good faith, exclusively with each other, or for a specific period of time." Dkt. 109-4, at 1-2. The term "negotiation" is mentioned in the "Legally Binding" section, which reads, "[u]pon acceptance, this Letter of Intent is binding upon purchaser and seller, subject only to negotiation and execution of a mutually acceptable Purchase and Sale Agreement." *Id.* at 2. Accordingly, it is not likely a contract to negotiate under Washington law. Moreover, even if it could be construed as such, "[u]nder a contract to negotiate, the parties do not intend to be bound if negotiations fail to reach ultimate agreement on the substantive deal." *Keystone Land* at 176. In Washington, "there is no 'free-floating' duty of good faith and fair dealing that is unattached to an existing contract. The duty exists only 'in relation to performance of a specific contract term.'" *Id.* In the absence of an enforceable contract, the law does not enforce upon the parties a "duty to go forward." *Id.* at 180. Abitibi's Motion for Summary Judgment should be granted in so far as Plaintiffs seek to have the Letter of Intent specifically enforced to require that the parties move forward to closing.

### D.   SPECIFIC PERFORMANCE - MATERIAL TERMS

Specific performance of a real estate contract is available only if the parties have agreed on all material terms. *Kruse v. Hemp,* 121 Wn.2d 715, 723 (1993). When specific performance is sought, rather than legal damages, a higher standard of proof must be met: clear and unequivocal evidence that leaves no doubt as to the terms, character, and existence of the contract. *Paradiso v. Drake*, 135 Wn. App. 329, 335, 143 P.3d 859 (2006); Berg *v. Ting*, 125 Wn.2d 544, 556 (1995)(*citing Kruse*); *Hubbell v. Ward*, 40 Wn.2d 779 (1952).

ORDER - 12

1    Abitibi argues that the parties did not mutually agree on the necessary material terms.

2    "The acceptance of an offer is always required to be identical with the offer, or there is no meeting of the minds and no contract. Generally, a purported acceptance which changes the terms of the offer in any material respect operates only as a counteroffer, and does not consummate the contract." *Sea-Van Investments Associates v. Hamilton,* 125 Wn.2d 120, 126 (1994)(*internal citations omitted*). "An acceptance can also request a modification of terms, so long as the additional terms are not conditions of acceptance and the acceptance is unequivocal. If any additional conditions contained in the purported acceptance can be implied in the original offer, then they also do not constitute material variances so as to make the acceptance ineffective." *Id.*

a.    *Environmental Indemnity*

Indemnification provisions constitute "material terms" of a real property contract. *Hubbell*, at 783. The issue here, then, is whether the parties agreed upon the terms of environmental indemnity.

The Letter of Intent states in the "As Is Condition" that,

> Seller shall provide to Purchaser within 5 days after execution of Letter of Intent, copies of all environmental information, surveys, permits, etc., available on the site and other information and documents as requested by the purchaser. Purchaser agrees to accept the property in it's "AS IS, WHERE IS" condition, subject only to the above contingencies.

Dkt. 109-4, at 2. The last draft Purchase and Sale Agreement from Plaintiffs excluded certain matters from the environmental release and indemnity portion of the contract, more specifically listed above. Dkt. 109-3, 10 and 37. Plaintiffs do not show that there was agreement on environmental indemnity issues.

b.    *Tax*

The determination of who will pay the sales tax is a material term. *Hubbell*, at 783. Under the heading "Survey and Title" the Letter of Intent provides that "Seller, at Seller's expense, will be required to get current title commitment and an ALTA Type B survey and to pay any

ORDER - 13

required transfer taxes and fees. All other closing prorations shall be per local custom." *Id*. In Plaintiff's last version of the Purchase and Sale Agreement, in the provision entitled "8.4 Closing Costs and Prorations," struck Abitibi's language which required that the "[b]uyer shall pay any sales tax applicable to the sale." Dkt. 109-3 at 42. The remaining language read, "any closing expenses of the sale shall be paid by Buyer and Seller in accordance with customary practice as determined by the Title Company." *Id.* Plaintiffs do not show a meeting of the minds on this material term.

         c.     <u>*Other Contingencies and Issues*</u>

There are other contingencies and issues which leave substantial doubt as to the terms, character and existence of a contract. For example:

(1) Was there agreement on and execution of a Purchase and Sale Agreement (*see* "Earnest Money" paragraph of the Letter of Intent).

(2) Was the $50,000 "to be held . . . to benefit of purchaser" forfeitable earnest money if purchaser did not complete the purchase? (*See* "Earnest Money" Paragraph of the Letter of Intent).

(3) Does the earnest money remain "non-refundable" if the transaction does not close due to a default on the part of the seller, or is it really intended to be non-refundable as though it were payment for a option? (*See* "Inspection Period" paragraph of the Letter of Intent).

(4) Contingencies are not clearly laid out: "inspection of review of title, survey, and easements" are subject to "Purchaser's sole discretion" (*See* "Contingencies" paragraph of the Letter of Intent); but are the contents "of all environmental information,

ORDER - 14

|     |     |                                                                                       |
| --- | --- | ------------------------------------------------------------------------------------- |
|     |     | surveys, permits, etc. . . . . and other information and documents as requested by purchaser" (*See* "'As Is' Condition" paragraph of Letter of Intent) also subject to approval of purchaser? |
|     | (5) | Who pays what commission? (*See* "Commission" paragraph of the Letter of Intent)      |
|     | (6) | What additional terms will the parties have to negotiate and agree on to reach a "mutually acceptable Purchase and Sale Agreement"? (*See* "Legally Binding" paragraph of the Letter of Intent) (The court is aware that typical Washington Purchase and Sale Agreements (or Earnest Money Agreements) are much more lengthy and complicated, and cover more issues than this Letter of Intent.) What happens if the parties are unable to reach agreement on the terms of a Purchase and Sale Agreement? |
|     | (7) | The Letter of Intent, in its last, untitled, paragraph, specifically listed seller's method of accepting the Letter of Intent. This condition was never met. Ms. Herzog's equivocal 27 July 2006 email contemplated acts that never occurred. The email did not amount to acceptance of an offer - even assuming that Ms. Herzog had authority to act for defendant, and assuming her email reflected a legally adequate email execution. |

No closing escrow agent or lawyer could reasonably draft closing documents from the Letter of Intent. The purported terms were not sufficiently definite and certain to allow enforcement

ORDER - 15

without the court supplying terms the parties have not agreed upon. This court can not order conveyance of the subject property by specific performance on these facts.

### III.   OTHER ISSUES

The court is not satisfied that damages can not be fairly determined if Plaintiffs ultimately prevail, nor is the court satisfied that any public policy issues should trump the basic real estate contract issues decided in this Order.

It follows from this order that Plaintiffs should withdraw the *lis pendens*.

### IV.   ORDER

Therefore, it is hereby, **ORDERED** that:

- Abitibi's Motion for Partial Summary Judgment Dismissing Specific Performance Claims (Dkt. 104) is **GRANTED**;
- Plaintiff's claims for specific performance are **DISMISSED**; and
- The Clerk of the Court is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 1st day of April, 2008.

                                                                     _____
                                                                     ROBERT J. BRYAN
                                                                     United States District Judge

ORDER - 16