UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

COMMERCIAL DEVELOPMENT
COMPANY, a Missouri corporation;
ENVIRONMENTAL LIABILITY
TRANSFER INC., a Missouri corporation; and
WASH PAPER LLC, a Missouri Washington
limited liability company as assign,

            Plaintiffs,

      v.

ABITIBI-CONSOLIDATED INC., a foreign
corporation, and VANESSA HERZOG,
individually and her marital community,

            Defendants,

_____

VANESSA HERZOG, individually and her
marital community,

            Intervenor Plaintiff,

v.

COMMERCIAL DEVELOPMENT
COMPANY, a Missouri corporation;
ENVIRONMENTAL LIABILITY
TRANSFER INC., a Missouri corporation; and
WASH PAPER LLC, a Missouri Washington
limited liability company as assign,

            Defendants in Intervention.

Case No. C07-5172RJB

ORDER GRANTING, IN PART, AND
DENYING, IN PART, PLAINTIFFS'
MOTION FOR SUMMARY
JUDGMENT ON INTERVENORS'
FIRST, SECOND, AND THIRD
CAUSES OF ACTION

      This matter comes before the Court on Plaintiffs'("CDC Plaintiffs") Motion for Summary

Judgment Regarding Intervenors' First, Second, and Third Causes of Action.  Dkt. 121.  The Court

has considered the pleadings filed in support of and in opposition to the motion and the file herein.

ORDER - 1

# I.   FACTS AND PROCEDURAL BACKGROUND

CDC Plaintiffs originally filed this action on March 21, 2007, in Pierce County, Washington Superior Court, alleging Abitibi-Consolidated Inc. ("Abitibi") wrongfully refused to sell commercial real property located in Steilacoom, Washington to CDC Plaintiffs. Dkt. 1; Dkt. 25, at 10-11.  The subject property is approximately 84 acres and was a former paper mill site.  *Id*.

## A.   RELEVANT EVENTS

According to CDC Plaintiffs, the events leading up to this suit began in the spring of 2006. Dkt. 13.  After making several offers to buy the subject property from Abitibi, on May 30, 2006, Mark Hinds, a Vice President for Plaintiff Environmental Liability Transfer Inc., flew to Montreal, Canada. Dkt. 13 at 1-2.  Mr. Hinds met with employees and officers of Abitibi.  *Id*. at 2.  Mr. Hinds presented a Letter of Intent.  *Id*.  According to Mr. Hinds, the parties from Abitibi told him that a "deal could probably be worked out with a few changes to the Letter of Intent."  *Id*.  Mr. Hinds states that he made the requested changes, signed, and emailed the updated Letter of Intent (Dkt. 109-4) to Abitibi on June 1, 2006.  *Id*.  Parties do not dispute that the expiration date of the Letter of Intent was extended to the end of June 2006.

Mr. Hinds states that between the May 30, 2006 meeting and July 27, 2006 he "had several telephone conversations with Jim Gartshore, Vice President of Abitibi, regarding the agreement between CDC Plaintiffs and [Abitibi] regarding the sale and purchase of the former Abitibi paper and pulp mill." Dkt. 76, at 2.  Mr. Hinds states that, based on his conversations with Mr. Gartshore, he "understood that Abitibi accepted the terms of the LOI but was merely experiencing bureaucratic delays in returning the signed copy to memorialize their acceptance."  *Id*.

Although Abitibi never signed the Letter of Intent, on July 27, 2006, Mr. Hinds received an email from Abitibi's real estate agent, Intervenor Venessa Herzog, stating,

> Environmental Liability Transfer, Inc. has been selected as the purchaser for the Abitibi property.  The purchase price in $4,000,000.  I will be forwarding the signed letter of intent and purchase and sale agreement shortly.  Mark Hinds is the contact person for the selected purchaser for the Abitibi plant.  Please send a copy of the 80%

ORDER - 2

1    survey and title report to Mark and ELT's General Counsel, Mike McCartney.

2    Dkt. 11, at 6.  The email was addressed to a title company, LandAmerica American Title.  Dkt. 11,

3    at 6.  Mr. Hinds and Mr. McCartney (of Plaintiff  Environmental Liability Transfer, Inc.) and Ms.

4    Minville and Mr. Gartshore (of Defendant Abitibi), were copied.  *Id.*

5    CDC Plaintiffs state that they "took this email at face value, and understood that [they] had

6    been selected as purchaser." Dkt. 76, at 2.  Michael McCartney, Vice President and In House

7    Counsel for Plaintiff Environmental Liability Transfer, stated that CDC Plaintiffs believed that this

8    email constituted an e-signature on the Letter of Intent. Dkt. 11 at 2.  According to Mr. Hinds,

9    (Plaintiffs' Vice President) who is a real estate agent licensed in the state of Missouri, it was his

10   experience in the real estate industry for "real estate agents to communicate acceptance of their

11   principals to land sale transactions and thereby bind such principals to the deal." Dkt. 76, at 3.  Mr.

12   Hinds states that CDC Plaintiffs' "primary contact during the negotiations period for this transaction

13   was Ms. Herzog, and she conveyed numerous legal documents to [them]." *Id.*  Mr. Hinds states that

14   "[a]t no point did Abitibi inform me that Ms. Herzog did not have the authority to bind Abitibi by her

15   words or actions." *Id.*

16   Mr. Hinds states further that he had "approximately 10-20 conversations with Mr. Gartshore

17   regarding the status of the deal between June 2006 and February 2007.  During these conversations,

18   he expressed frustration that the Purchase and Sale Agreement had not yet been finalized and assured

19   me that we had a deal with Abitibi." Dkt. 76, at 3.  CDC Plaintiffs allege that their belief that they

20   had a deal was reaffirmed on August 16, 2006, when Mr. Hinds received an email from Ms. Minville,

21   in house counsel for Abitibi, which stated that "they were working on an updated Asset Purchase

22   Agreement." *Id.* at 3.

23   On January 19, 2007, Ms. Minville of Abitibi sent a Purchase and Sale Agreement to Mr.

24   McCartney, In-House Counsel for CDC Plaintiffs.  Dkt. at 109-2, at 1.  In the email (the Purchase

25   and Sale Agreement was an attachment) Ms. Minville cautions that "this document has not been

26   ORDER - 3

1   reviewed by all of my internal clients, and Washington State counsel, and therefore, remains subject

2   to their comments." *Id*. This document was never signed by either party. Dkt. 109-2, at 17.

3       On February 5, 2007, Mr. McCartney, in House Counsel for CDC Plaintiffs, sent Ms.

4   Minville of Abitibi an email entitled "Draft Purchase Agreement" which stated "[p]lease find a clean

5   and marked copy showing minor changes to your draft. We look forward to finalizing in the near

6   future." Dkt. 109-3, at 1. This document added language in the "4.5 Release and Indemnity"

7   section of the Purchase and Sale Agreement (*Id.*, at 10 and 37), and made other changes to the draft.

8   *Id.* 18, 42, and 46. This document was also unsigned. *Id*. at 18 and 46.

9       In the later part of February 2007, CDC Plaintiffs learned that Abitibi was entertaining new

10  offers for the property. Dkt. 11, at 3. On March 20, 2007, Lin Larson, CDC Plaintiffs' real estate

11  agent, sent an email to Ms. Herzog acknowledging that CDC Plaintiffs were aware Abitibi had a

12  proposal of $5,000,000 for the property and proposed a new suggested price of $4,100,000. Dkt.

13  47, at 139. That proposal was declined and this suit followed, along with the filing of a Lis Pendens

14  by CDC Plaintiffs, on March 23, 2007. Dkt. 1-2, at 8-15. The case was filled in state court, and

15  removed here on April 4, 2007. Dkts. 1 and 2.

16      The Second Amended Complaint alleges that Abitibi, through its real estate agent, Vanessa

17  Herzog, listed the subject property for sale. Dkt. 97, at 2. CDC Plaintiffs allege that, on June 1,

18  2006, as a result of "substantial negotiations," CDC Plaintiffs submitted an executed Letter of Intent

19  to Abitibi. *Id*. at 4. CDC Plaintiffs allege that the Letter of Intent was "legally binding upon

20  Purchaser and Seller subject only to negotiation and execution of a mutually acceptable Purchase and

21  Sale Agreement." *Id*. at 9. CDC Plaintiffs allege that Herzog represented in the July 27, 2006 email

22  that CDC Plaintiffs had been "selected as the purchaser of the Abitibi property." *Id*. at 5. CDC

23  Plaintiffs allege that on February 16, 2007, Defendants demanded additional compensation for the

24  property. *Id*. at 6. They allege that Abitibi and Herzog had been showing the property to other

25  prospective purchasers without informing CDC Plaintiffs or the other purchasers. *Id*. CDC Plaintiffs

26

1   allege that on February 27, 2007, Herzog forwarded an email containing Mr. Paul Brain's (her

2   husband and a Washington attorney) legal opinion of the enforceability of the Letter of Intent to

3   Abitibi. *Id.* at 7.  CDC Plaintiffs allege that Herzog forwarded the email to persuade Abitibi to

4   breach its contractual obligations to CDC Plaintiff under the color of a legal opinion. *Id.*

5       CDC Plaintiffs make claims for breach of contract, promissory estoppel, violations of the

6   implied covenants of good faith and fair dealing, fraud, and injunctive relief against Abitibi. *Id.* at 8-

7   12.  CDC Plaintiffs make a fraud claim against Herzog. *Id.* at 10-11.  CDC Plaintiffs' claim for

8   violations of the Sarbanes Oxley Act of 2002, Pub. L. No. 107-204, 116 Stat. 745, was dismissed

9   with prejudice upon Defendant Abitibi's Motion for Partial Summary Judgment.  Dkt. 77.  CDC

10  Plaintiffs sought specific performance of the parties' alleged real estate contract, injunctive relief, and

11  monetary damages.  Dkt. 97 at 13-14.  The claim for specific performance has been dismissed.  Dkt.

12  130.

13      On October 1, 2007, Ms. Herzog and her marital community's Motion to Intervene in this

14  matter was granted.  Dkt. 37.  Ms. Herzog and her marital community are represented by Ms.

15  Herzog's husband, Paul Brain.

16      Intervenors filed the Complaint in Intervention on October 3, 2007.  Dkt. 38.  They make

17  three claims.  *Id.*  First, they seek a judicial declaration that "the conduct on the part of Ms. Herzog

18  relied on by [CDC Plaintiffs] cannot, as a matter of law, create any liability on legal or equitable

19  grounds for Ms. Herzog, GVA Kidder Mathews or [Abitibi]" to CDC Plaintiffs. *Id.*, at 2-3.

20  Secondly, they make a claim for tortuous interference, alleging that CDC Plaintiffs here have

21  "wrongfully and tortuously interfered with the sale of the property to third parties causing damages

22  to Ms. Herzog in an amount which will be proven with specificity at trial." *Id.* at 3.  Lastly, Ms.

23  Herzog makes a claim for damages and attorneys fees under RCW 4.28.328. *Id.*

24      On February 5, 2008, Intervenors' Motion for Partial Summary Judgment was denied.  Dkt.

25  95.  On April 1, 2008, Abitibi's Motion for Partial Summary Judgment Dismissing Specific

26  ORDER - 5

1   Performance Claims was granted.  Dkt. 130.  Plaintiffs' claims for specific performance were

2   dismissed.  *Id*.  CDC Plaintiffs' Motion for Reconsideration of the order dismissing their specific

3   performance claims was denied.  Dkt. 152.  On April 1, 2008, Intervenors' Motion for Summary

4   Judgment Re: CDC Plaintiffs' Fraud Claims was denied.  Dkt. 132.  Intervenor Plaintiffs' Motion for

5   Reconsideration of that order was denied.  Dkt. 151.

6       **B.     PENDING MOTION**

7           CDC Plaintiffs (Defendants in Intervention) move for summary dismissal, with prejudice, of

8   Intervenor Plaintiffs' claims.  Dkt. 121.   CDC Plaintiffs argue that:  1) they are entitled to Summary

9   Judgment on Intervenor's First Cause of Action for Declaratory Judgment, 2) CDC Plaintiffs did not

10  cause a breach or termination of any expectancy of Intervenors, this suit was filed with a proper

11  purpose and in good faith, and Intervenors can not show that they were damaged, and so

12  Intervenors' claim for interference with a business expectancy should be dismissed, and 3)

13  Intervenors are not entitled to damages and attorneys fees under RCW 4.28.328.  *Id*.

14          Intervenors Respond, conceding that their first claim should be dismissed.  Dkt. 143, at 2.

15  They argue that 1) there are genuine issues of material fact as to whether CDC Plaintiffs have

16  interfered with the closing of the deal with a specific purchaser, whether plaintiffs acted in good faith

17  and with proper means, and whether they were damaged such that Intervenors' second cause of

18  action should not be dismissed, and 2) Intervenor Herzog is an "aggrieved party" under RCW

19  4.28.328.  *Id*.

20          CDC Plaintiff's reply, arguing that 1) Intervenors have not raised issues of fact precluding

21  dismissal of her second cause of action, and 2) Intervenors are not shown that they are "aggrieved

22  parties."  Dkt. 159.

23      **II.     DISCUSSION**

24  **A.     SUMMARY JUDGMENT STANDARD**

25          Under Fed. R. Civ. P. 56(b) a "party against whom relief is sought may move at any time,

26  ORDER - 6

1   with or without supporting affidavits, for summary judgment on all or part of the claim."  Summary

2   judgment is proper only if the pleadings, the discovery and disclosure materials on file, and

3   affidavi0ts, if any, show that there is no genuine issue as to any material fact and the moving party is

4   entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party is entitled to

5   judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an

6   essential element of a claim in the case on which the nonmoving party has the burden of proof.

7   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  There is no genuine issue of fact for trial where

8   the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party.

9   *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party

10  must present specific, significant probative evidence, not simply "some metaphysical doubt."); *See*

11  *also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists if there is

12  sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the

13  differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W.*

14  *Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

15          The determination of the existence of a material fact is often a close question.  The court

16  must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a

17  preponderance of the evidence in most civil cases.  *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv.,*

18  *Inc.*, 809 F.2d at 630.  The court must resolve any factual issues of controversy in favor of the

19  nonmoving party only when the facts specifically attested by that party contradict facts specifically

20  attested by the moving party.  *Id.*  The nonmoving party may not merely state that it will discredit the

21  moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the

22  claim.  *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non

23  specific statements in affidavits are not sufficient, and missing facts will not be presumed.  *Lujan v.*

24  *Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

25  /

26  ORDER - 7

**B.     CLAIM ONE - DECLARATORY RELIEF**

Intervenor concedes that her first claim for relief should be dismissed.

**C.     CLAIM TWO - INTERFERENCE WITH A BUSINESS EXPECTANCY**

As a federal court sitting in diversity, this court is bound to apply state law.  *State Farm Fire and Casualty Co. v. Smith*, 907 F.2d 900, 901 (9th Cir. 1990).  In the state of Washington, a claim for tortious interference with a contractual relationship or business expectancy has five elements:

(1) the existence of a valid contractual relationship or business expectancy;

(2) that defendants had knowledge of that relationship;

(3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy;

(4) that defendants interfered for an improper purpose or used improper means; and

(5) resultant damage.

*Leingang v. Pierce County Medical Bureau, Inc.,* 131 Wash.2d 133, 157 (1997).

CDC Plaintiffs move for dismissal of Intervenors second cause of action, arguing that Intervenors can not make the required showing as to the third, fourth, and fifth elements.  Dkt. 121, 10-15.

1.     Element Three - Intentional Interference

Intervenor Herzog acknowledges that she remains the listing agent for the Steilacoom property.  Dkt. 144, at 2.  She argues that her claim is based on the fact that by filing the Notice of Lis Pendens, CDC Plaintiffs intentionally interfered with a commission that would have resulted from the sale of the property to American Iron and Metal Company ("AIM").  Dkt. 143, at 11. Intervenor Herzog states that prior to the filing of this suit and the Notice of Lis Pendens, Abitibi informed her that, AIM's offering price would be accepted, subject to a mutually acceptable Purchase and Sale Agreement.  Dkt. 144, at 2.  Intervenor Herzog states that Abitibi and AIM did not negotiate an acceptable Purchase and Sale Agreement because CDC Plaintiffs filed the Notice of Lis Pendens. *Id.*  Herzog states that AMI was not represented by an agent, so the entire commission

ORDER - 8

1   would have been payable to her.  *Id.*

2        Intervenor Herzog argues that Plaintiffs' actions delayed a transaction, and that even though

3   the parties had not yet completed a Purchase and Sale Agreement, she had a reasonable expectation

4   of a commission.  She has shown that there are material facts in dispute as to whether Plaintiffs

5   intentionally interfered inducing or causing a breach or termination of the relationship or expectancy,

6   considering the inferences that can reasonably be drawn from the evidence.

7                        2.    Element Four - Improper Purpose

8        "Intentional interference requires an improper objective or the use of wrongful means that in

9   fact cause injury to the person's contractual relationship.  Exercising in good faith one's legal interests

10  is not improper interference."  *Leingang,* at 157.

11       This Court has ruled that the Letter of Intent and various drafts of the Purchase and Sale

12  Agreement do not comply with the Statute of Frauds, nor did they include all necessary terms, and

13  are not specifically enforceable.  Dkt. 130.  Intervenors argue that CDC Plaintiffs knew that they did

14  not have reasonable good faith basis in fact or law to claim an interest in the property based on the

15  statute of frauds.  Dkt. 143, at 13.  Intervenors argue that CDC Plaintiffs therefore, were not acting

16  in good faith when they filed the Notice of Lis Pendens.  *Id.*  Intervenors ascribe various other

17  nefarious motives to CDC Plaintiffs' decision to file the Notice of Lis Pendens, on which Intervenors

18  make no showing, by direct evidence, of such motives.  Nevertheless, Intervenors have pointed to

19  evidence in the record, although it is barely sufficient, from which a jury could infer that Plaintiffs

20  acted with an "improper objective" or "used wrongful means."  *Leingang,* at 157.  In light of the

21  requirement that the evidence is to be taken in a light most favorable to the non-moving party,

22  *Anderson*, 477 U.S. at 254, the Court finds that Intervenors' showing is adequate.  The Court now

23  makes no ruling on whether Plaintiffs were "substantially justified" in the filing of the Notice of Lis

24  Pendens pursuant to RCW 4.28.328.

25  /

26

3.     Element Three - Damage

Intervenors argue that their damages, at least, amount to loss of the use of the commission money for the period of time in which the property is unable to be sold due to the filing of the Notice of Lis Pendens.  Intervenors have met their burden of proof as to this element.

4.     Conclusion

Intervenors have shown that there are issues of fact as to whether Plaintiffs improperly interfered with a business expectancy.  Summary Judgment should be denied as to Intervenors' second claim.  Although this claim survives summary judgment, it appears to the Court that it will be about as difficult to prove as Plaintiffs' fraud claims.

**D.     CLAIM THREE - FOR DAMAGES AND ATTORNEYS FEES UNDER RCW 4.28.328(2)**

The primary duty in interpreting any statute is to discern and implement the intent of the legislature.  *Lakemont Ridge Homeowners Ass'n v. Lakemont Ridge Ltd.,* 156 Wash.2d 696, 698 (2006).  The starting point must always be the statute's plain language and ordinary meaning.  *Id*. at 698-99.  "Statutes must be interpreted and construed so that all the language used is given effect, with no portion rendered meaningless or superfluous."  *Id.* (*internal citations omitted*).  "All words must be read in the context of the statute in which they appear, not in isolation or subject to all possible meanings found in a dictionary."  *State v. Lilyblad*, 163 Wash.2d 1 (2008).

Pursuant to RCW 4.28.328(2):

> A claimant in an action not affecting the title to real property against which the lis pendens was filed is liable to an aggrieved party who prevails on a motion to cancel the lis pendens, for actual damages caused by filing the lis pendens, and for reasonable attorneys' fees incurred in canceling the lis pendens.

A "claimant" is defined as the party who filed the lis pendens, CDC Plaintiffs here.  RCW 4.28.328(1)(b).  The statue defines an "aggrieved party" as (i) "a person against whom the claimant asserted the cause of action in which the lis pendens was filed" or "(ii) a person having an interest or a right to acquire an interest in the real property against which the lis pendens was filed."  RCW

ORDER - 10

4.28.328(1)(c).  Plaintiff CDC argues that Intervenor Herzog is not an "aggrieved party" as defined

in the statute, and so her third claim, for damages and attorneys fees, should be dismissed.  Dkt. 121,

at 15-17 and Dkt. 159, at 8-12.

        1.    <u>A Person Against Whom the Claimant Asserted the Cause of Action in Which the Lis Pendens was Filed</u>

Intervenor Herzog is not a "person against whom the claimant asserted the cause of action in

which the lis pendens was filed."  The statute does not define "cause of action."  Black's Law

Dictionary defines "cause of action" as "(1) a group of operative facts giving rise to one or more

basis for suing; a factual situation that entitles one person to obtain a remedy in court from another

person; claim . . . ; (2) a legal theory of a lawsuit, (3) loosely, a lawsuit."  Black's Law Dictionary

214 (7th ed. 1999).  The statute defines "lis pendens" as a "lis pendens filed under RCW 4.28.320 or

4.28.325 or other instrument having the effect of clouding the title to real property."  RCW

4.28.328(1)(a).  RCW 4.28.320 provides "at any time after an action affecting title to real property

has been commenced . . . the plaintiff . . . may file . . . a notice of pendency of the action."  RCW

4.28.325 provides that "[i]n an action in a United States district court for any district in the state of

Washington affecting the title to real property . . . the plaintiff . . . if the same be intended to affect

real property, may file notice of the pendency of the action" in the county in which the property is

situated.

After the Complaint was filed in this matter, CDC Plaintiffs filed the Notice of Lis Pendens.

Dkt. 1-2, at 8-15.  At that time, the only Defendant named was Abitibi.  *Id.*  CDC Plaintiffs'

Amended Complaint sought specific performance of the alleged real estate contract - they sought to

take title to the property.  Dkt. 25.  Abitibi's Motion to Quash the Notice of Lis Pendens was denied.

Dkt. 22.  Intervenors were given leave to join the case on October 1, 2007.  Dkt. 37.  CDC Plaintiffs

did not assert a claim against Intervenors until February 12, 2008.  Dkt. 97.  The cause of action, or

claim, CDC Plaintiffs assert against Intervenor Herzog here, fraud, does not "affect title to real

property," unlike the claims made against Abitibi.  Herzog has not shown that she has an interest in

the real property at issue.  The claim against her does not have the "effect of clouding the title" to

property in which she has an interest in the title.  RCW 4.28.328(1)(a).  Intervenors' position

requires an interpretation of the statute which ignores the full phrase "the cause of action in which

the lis pendens was filed."  RCW 4.28.328 (1)(c)(i).  This the Court will not do.  *State v. Lilyblad*,

163 Wash.2d 1 (2008)(words in a statute should not be read in isolation, and the meaning of words

may be indicated or controlled by those with which they are associated).

2.   A Person with an Interest or Right to Acquire and Interest in the Real
Property

Intervenor Herzog was the real estate agent representing the seller, Abitibi, in this matter.

There is no evidence in the record that she had any interest in the real property.  There is no evidence

in the record that she had "a right to acquire an interest in the real property against which the lis

pendens was filed."  She is not an "aggrieved party" under the second definition listed in the statute.

Intervenor Herzog argues that she could be "within the class of person[s] entitled to claim an

interest in the property" pursuant RCW 60.42.010 and RCW 60.42.060. Dkt. 143, at 15.  She

argues that although RCW 60.42.010 is a only a lien on the proceeds of the sale (personal property)

and not the real property, it still is recorded in the same manner as a deed.  *Id*.  Therefore, she claims,

it is a defect in title that must be cleared if the property were sold.  *Id*.  She reasons that **if** that

defect amounts to an interest in the property, she would be an "aggrieved party" under the statute.

Intervenors ask for an unduly broad reading of the statute.  As above, the statute excludes recovery

of damages and attorneys fees for the wrongful filing of a notice of lis pendens pursuant to RCW

60.42.010.  Intervenors have made no showing that the legislature intended such an interpretation of

RCW 4.28.328.  Intervenors' convoluted claim to having an interest in the property and to being an

"aggrieved party" is without merit.

3.   Conclusion

Intervenors have not shown that they are "aggrieved parties" and so are unable to make a

claim for damages and attorneys fees under RCW 4.28.328(2).  Intervenors' third claim for relief

ORDER - 12

1    should be dismissed.

2                                 **III.    ORDER**

3         Therefore, it is hereby, **ORDERED** that:

4    •    Defendants in Intervention's Motion for Summary Judgment Regarding Intervenors'

5         First, Second, and Third Causes of Action (Dkt. 121) is **GRANTED, IN PART,**

6         **AND DENIED, IN PART** as follows:

7              •    The Motion is granted as to Intervenors' first claim, for declaratory relief, and

8                   third claim, for damages and attorneys fees pursuant to RCW 4.28.328, and

9                   those claims are **DISMISSED**; and

10             •    The Motion is **DENIED** as to Intervenors' second claim.

11   •    The Clerk of the Court is directed to send uncertified copies of this Order to all

12        counsel of record and to any party appearing *pro se* at said party's last known

13        address.

14        DATED this 24th day of April, 2006.

15

16                                      Robert J. Bryan
                                        United States District Judge
17

18

19

20

21

22

23

24

25

26   ORDER - 13