UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| COMMERCIAL DEVELOPMENT COMPANY, a Missouri corporation; ENVIRONMENTAL LIABILITY TRANSFER INC., a Missouri corporation; and WASH PAPER LLC, a Missouri Washington limited liability company as assign,<br><br>    Plaintiffs,<br><br>  v.<br><br>ABITIBI-CONSOLIDATED INC., a foreign corporation, and VANESSA HERZOG, individually and her marital community,<br><br>    Defendants,<br>────────────────────────<br>VANESSA HERZOG, individually and her marital community,<br><br>    Intervenor Plaintiff,<br> v.<br><br>COMMERCIAL DEVELOPMENT COMPANY, a Missouri corporation; ENVIRONMENTAL LIABILITY TRANSFER INC., a Missouri corporation; and WASH PAPER LLC, a Missouri Washington limited liability company as assign,<br><br>    Defendants in Intervention. | Case No. C07-5172RJB<br><br>ORDER ON ABITIBI'S MOTION FOR PARTIAL SUMMARY JUDGMENT DISMISSING PLAINTIFFS' FIRST CLAIM FOR RELIEF AND THIRD CLAIM FOR RELIEF |

This matter comes before the Court on Abitibi-Consolidated Inc.'s ("Abitibi") Motion for Partial Summary Judgment Dismissing Plaintiffs' First Claim for Relief and Third Claim for Relief. Dkt. 142. The Court has considered the pleadings filed in support of and in opposition to the motion

ORDER - 1

1  and the file herein.

2  ## I.    FACTS AND PROCEDURAL BACKGROUND

3      Plaintiffs originally filed this action on March 21, 2007, in Pierce County, Washington

4  Superior Court, alleging that Abitibi wrongfully refused to sell Plaintiffs commercial real property

5  located in Steilacoom, Washington.  Dkt. 1; Dkt. 25, at 10-11.  The subject property is

6  approximately 84 acres and was a former paper and pulp mill site.  *Id*.

7  ### A.    RELEVANT EVENTS

8      The relevant events are recounted at length in the Order on Abitibi's Motion for Partial

9  Summary Judgment Dismissing Specific Performance Claims (Dkt. 130), and are incorporated herein

10  by this reference with a few noted additions:

11      As an addition to the prior Order on Abitibi's Motion for Partial Summary Judgment

12  Dismissing Specific Performance Claims, the Court notes that there is evidence in the record that

13  Plaintiffs submitted a letters of intent to Abitibi on October, 25, 2005, and February 6, 2006

14  regarding the subject property.  Dkt. 174, at 7-8, and 12-13.  Abitibi responded with a letter, dated

15  April 5, 2006 and signed by Vanessa Herzog, it's real estate agent, which indicated that Abitibi had

16  "selected two potential purchasers to move forward with."  Dkt. 174, at 17.  The letter then stated

17  that Abitibi's goal was to put the "property under contract with one purchaser, based on a non-

18  negotiable price with non-refundable earnest money."  *Id.*  The letter indicated that Abitibi would

19  provide certain documents and an opportunity for Plaintiffs to have access to the property.  *Id*.  The

20  letter stated that by May 15, 2006, Abitibi wanted Plaintiffs to resubmit their offer.  *Id*.

21      The Court notes that for the purposes of this motion, Plaintiffs additionally point to an email

22  from Ms. Minville, dated October 18, 2006, which according to Plaintiffs, "informed Defendant's

23  environmental counsel that Plaintiffs had been identified as the purchasers for the property," as

24  evidence that they had a deal.  Dkt. 173, at 7, (*citing* Dkt. 97, at 17).  That email references a

25  meeting with the Washington State Department of Ecology and states that she "copied Mike

26  ORDER - 2

1  McCartney, who is legal counsel for ELT, our purchaser for the West Tacoma site, who should also

2  participate." Dkt. 97, at 17.

3  **B.    ALLEGATIONS IN THE COMPLAINT AND PROCEDURAL HISTORY**

4  The Second Amended Complaint alleges that Abitibi, through its real estate agent, Vanessa

5  Herzog, listed the subject property for sale. Dkt. 97, at 2. Plaintiffs allege that, on June 1, 2006, as

6  a result of "substantial negotiations," Plaintiffs submitted an executed Letter of Intent to Abitibi. *Id*.

7  at 4. Plaintiffs allege that the Letter of Intent was "legally binding upon Purchaser and Seller subject

8  only to negotiation and execution of a mutually acceptable Purchase and Sale Agreement." *Id*. at 9.

9  Plaintiffs allege that Herzog represented in the July 27, 2006 email that Plaintiff had been "selected as

10  the purchaser of the Abitibi property." *Id*. at 5. Plaintiffs allege that on February 16, 2007,

11  Defendants demanded additional compensation for the property. *Id*. at 6. Plaintiffs allege that

12  Abitibi and Herzog had been showing the property to other prospective purchasers without

13  informing Plaintiffs or the other purchasers. *Id*. Plaintiffs allege that on February 27, 2007, Herzog

14  forwarded an email containing Mr. Paul Brain's (her husband and a Washington attorney) legal

15  opinion of the enforceability of the Letter of Intent to Abitibi. *Id*. at 7. Plaintiffs allege that Herzog

16  forwarded the email to persuade Abitibi to breach its contractual obligations to Plaintiff under the

17  color of a legal opinion. *Id*.

18  Plaintiffs make claims for breach of contract, promissory estoppel, violations of the implied

19  covenants of good faith and fair dealing, fraud, and injunctive relief against Abitibi. *Id*. at 8-12.

20  Plaintiffs' claim for violations of the Sarbanes Oxley Act of 2002, Pub. L. No. 107-204, 116 Stat.

21  745, was dismissed with prejudice upon Defendant Abitibi's Motion for Partial Summary Judgment.

22  Dkt. 77. On May 2, 2008, the Court was notified that Plaintiffs' fraud claim against Herzog was

23  resolved. Dkt. 172. Plaintiffs sought specific performance of the parties' alleged real estate

24  contract, and still seek injunctive relief, and monetary damages. Dkt. 97 at 13-14. Plaintiffs' claims

25  for specific performance were dismissed on April 1, 2008. Dkt. 130. The Motion for

26

1    Reconsideration on the Order dismissing the specific performance claims was denied on April 16,

2    2008.  Dkt. 152.  The instant motion seeks to have Plaintiffs' first claim for breach of contract and

3    third claim for breach of the implied covenant of good faith and fair dealing dismissed.  Dkt. 142.

4            Plaintiffs filed a Notice of Lis Pendens in Pierce County Superior Court and recorded the

5    Notice of Lis Pendens in the county real property records on March 23, 2007.  Dkt. 1-2, at 8-15.  On

6    April 4, 2007, Abitibi removed the case to this Court.  Dkts. 1 and 2.

7            On October 1, 2007, Ms. Herzog and her marital community's Motion to Intervene in this

8    matter was granted.  Dkt. 37.  The Court was informed that claims as between Plaintiffs and

9    Intervenors were resolved in a pleading filed on May 2, 2008.  Dkt. 172.

10           **C.     PENDING MOTION FOR SUMMARY JUDGMENT**

11           Abitibi moves for summary dismissal, with prejudice, of Plaintiffs' claims for breach of

12   contract and breach of the duty of good faith and fair dealing.  Dkt. 142.  Abitibi argues that:  1) the

13   parties did not form an enforceable agreement based on the drafts of the Purchase and Sale

14   Agreements, 2) the Letter of Intent is not enforceable because it fails to comply with the Statute of

15   Frauds and expired without being accepted, 3) the Letter of Intent in not enforceable because it does

16   not constitute any form of preliminary agreement to negotiate, and 4) Plaintiffs' third claim for

17   breach of the implied covenant of good faith and fair dealing should be dismissed because the parties

18   did not have an existing contract.  Dkt. 142.

19           Plaintiffs' Respond, arguing that there are genuine issues of material fact in dispute regarding

20   whether the parties had an enforceable agreement for the sale of the property.  Dkt. 173.  They argue

21   that:  1) there was a meeting of the minds sufficient to create offer and acceptance necessary to form

22   a binding contract; 2) the letter of Intent was signed for the purposes of the Statute of Frauds, 3) the

23   Letter of Intent contains all material terms required to form a valid contract for the cash sale of real

24   property, and 4) Defendants failed to negotiate in good faith after the Letter of Intent.  Dkt. 173.

25           Abitibi replies, and argues that 1) none of the 40 "facts" identified in Plaintiffs' opposition are

26   ORDER - 4

1   sufficient to defeat Abitibi's motion, 2) the Court has already ruled that there was no meeting of the

2   minds sufficient to create a binding contract, 3) the Court has already ruled that neither the Letter of

3   Intent or any other documents satisfies the Statute of Frauds, and 4) in the absence of an enforceable

4   agreement, there is no duty of good faith and fair dealing.  Dkt. 178.

5                                   **II.     DISCUSSION**

6          **A.     SUMMARY JUDGMENT STANDARD**

7          Under Fed. R. Civ. P. 56(b) a "party against whom relief is sought may move at any time,

8   with or without supporting affidavits, for summary judgment on all or part of the claim."  Summary

9   judgment is proper only if the pleadings, the discovery and disclosure materials on file, and

10  affidavi0ts, if any, show that there is no genuine issue as to any material fact and the moving party is

11  entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party is entitled to

12  judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an

13  essential element of a claim in the case on which the nonmoving party has the burden of proof.

14  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  There is no genuine issue of fact for trial where

15  the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party.

16  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party

17  must present specific, significant probative evidence, not simply "some metaphysical doubt."); *See*

18  *also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists if there is

19  sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the

20  differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W.*

21  *Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

22         The determination of the existence of a material fact is often a close question.  The court

23  must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a

24  preponderance of the evidence in most civil cases.  *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv.,*

25  *Inc.*, 809 F.2d at 630.  The court must resolve any factual issues of controversy in favor of the

26  ORDER - 5

1   nonmoving party only when the facts specifically attested by that party contradict facts specifically

2   attested by the moving party. *Id.* The nonmoving party may not merely state that it will discredit the

3   moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the

4   claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non

5   specific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v.*

6   *Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

7           **B.      BREACH OF CONTRACT CLAIM**

8           In deciding whether Plaintiffs' contract claim should be dismissed, the first issue to be

9   decided is whether the parties mutually assented to a contract. "Washington follows the objective

10  manifestation test for contracts.  Accordingly, for a contract to form, the parties must objectively

11  manifest their mutual assent. Moreover, the terms assented to must be sufficiently definite."

12  *Keystone Land and Development Co. v. Xerox Corp.*, 152 Wash.2d 171, 177-8 (2004)(*internal*

13  *citations omitted*).

14          The second issue, in deciding whether this claim should be dismissed, is whether the Statute

15  of Frauds is satisfied.  In the state of Washington, "[e]very conveyance of real estate, or any interest

16  therein ... shall be by deed." RCW 64.4.010.  The deed must be in writing and include the

17  acknowledged signature of the party bound thereby.  RCW 64.4.020.  This opinion will first examine

18  the drafts of the Purchase and Sale Agreement, and then review the Letter of Intent and the emails

19  Plaintiffs assert support their claim for breach of contract.

20          **1.      Purchase and Sale Agreement**

21          This Court has already ruled that the draft Purchase and Sale Agreements can not be

22  specifically enforced due to failure to comply with the Washington Statute of Frauds and the failure

23  to agree on several material terms.  Dkt. 130.  It is undisputed that neither party signed any of the

24  versions of the Purchase and Sale Agreement.  Plaintiffs offer no new basis upon which to find that

25  the various versions of the Purchase and Sale Agreement were accepted by either party or that they

26  ORDER - 6

1    complied with the Statute of Frauds.

2                    **2.    Letter of Intent**

3           This Court has also held that, assuming the Letter of Intent was an offer to contract, it can

4    not be specifically enforced because the parties did not agree on several material terms and because it

5    did not comply with the  Washington Statute of Frauds.  Dkt. 130.  Plaintiffs again assert that Ms.

6    Herzog's July 27, 2006 email is a written acceptance sufficient to satisfy the statute of frauds.  Dkt.

7    173, at 18.  Plaintiffs' state that their "position, as articulated in prior motions, is that Ms. Herzog's

8    July 27, 2006 email also constituted Defendants' acceptance of the binding LOI."  Dkt. 173, at 14.

9    The Court has already ruled twice on these issues, once in the Order Granting Abitibi's Motion for

10   Partial Summary Judgment Dismissing Specific Performance Claims (Dkt. 130) and in the Order

11   Denying the Motion for Reconsideration (Dkt. 154).  In order to fully clarify, the Court will once

12   again address these issues.

13                  a.    *Ms. Herzog's Email as Acceptance of the Letter of Intent*

14          On the outset, it is worth while to note that Plaintiffs have not shown that the terms in the

15   Letter of Intent were "sufficiently definite," even if properly accepted, to constitute a contract for the

16   sale of the property in question.  *Keystone*, at 177-8.  The Court has already ruled that the parties did

17   not agree on several material terms for this deal.  Dkt. 130.  Ms. Herzog's email, even if construed as

18   an acceptance, does not supply the additional terms.  It is an email to a title company, requesting that

19   they begin the title work, but acknowledging that the details of a contract have not been resolved.

20   Dkt. 11, at 6.  That email, sent from Ms. Herzog, stated:

21          Environmental Liability Transfer, Inc. has been selected as the purchaser for the
            Abitibi property.  The purchase price in $4,000,000.  I will be forwarding the signed
22          letter of intent and purchase and sale agreement shortly.  Mark Hinds is the contact
            person for the selected purchaser for the Abitibi plant.  Please send a copy of the 80%
23          survey and title report to Mark and ELT's General Counsel, Mike McCartney.

24   Dkt. 11, at 6.

25          In any event, Plaintiffs have made no showing that Ms. Herzog had the authority to bind

26   ORDER - 7

1   Abitibi. Under Washington law, real estate brokers and agents generally "do not have implied

2   authority to make a contract of sale, or make representations as to the quality, condition, or income

3   of property, but are limited to finding a purchaser, showing the property to him and identifying it or

4   indicating its boundaries." *Larson v. Bear,* 38 Wash. 2d 485, 489-90 (1951); *Sound Built Homes,*

5   *Inc. v. Windermere Real Estate/South Inc.,* 118 Wn. App. 617, 625-26 (2003)(holding that, unless

6   otherwise agreed, a real estate agent has authority to procure a willing and able buyer, but not

7   authority to sell the land). Plaintiffs point to no evidence in the record that Ms. Herzog could accept

8   the Letter of Intent or "sign" it on behalf of Abitibi. Even assuming that Ms. Herzog had the

9   authority to bind Abitibi, this Court has already ruled that no "reasonable jury could conclude that

10  this email constitutes a written signature to the Letter of Intent." Dkt. 130.

11      Contrary to Plaintiffs' assertions, the Court did not rule that a party could not accept a Letter

12  of Intent via email. The ruling was that, even assuming a party could accept via email, no reasonable

13  jury could conclude that July 27, 2006 email, from a real estate agent to a title company, was an

14  acceptance of the Letter of Intent. As stated in the prior order, the email in no manner indicates that

15  it operates as an acceptance of the Letter of Intent. Plaintiffs have failed to show that there is any

16  evidence that accepting the Letter of Intent was the intent of the email.

17      Even assuming Ms. Herzog had authority to bind Abitibi, and even assuming her 27 July

18  email was a signed document, it can not be construed as an acceptance of any offer made in the

19  Letter of Intent. At most, it was an agreement to continue negotiations. These negotiations did, in

20  fact, continue.

21              b.   *Ms. Herzog's Email and the Statute of Frauds*

22      Plaintiffs cited *Wagers v. Associated Mortg. Investors*, 577 P.2d 622, 19 Wash. App. 758

23  (1978) in their Motion for Reconsideration for the following proposition:

24          Sales of land to be enforceable must ordinarily be in writing signed by the party to be
            charged. However, a writing is not always essential to the validity of the contract. An
25          oral agreement can be equally effective and binding as a written one when the terms
            are reasonably established in writing by a series of documents and/or written

26  ORDER - 8

memorandum which would establish the subject matter, consideration, identity of the parties and the terms of the agreement.

Dkt. 148, at 3.  Notably, the Court in *Wagers* cited **no** authority for the above proposition.  *Wagers* at 764.  Moreover, no other court has cited this case for this proposition in the 30 years of its existence.  *Id.*  Additionally, the *Wagers* Court fails, in this recitation, to include a critical component of the Statute of Frauds:  that there must be a <u>signed</u> writing pursuant to the statute.  RCW 64.4.020 (*emphasis added*).  In any event, the *Wagers* Court went on to hold that the "buyer's unilaterally executed earnest money agreement, together with the letters exchanged between the buyer's and seller's attorneys, fail[ed] to establish an agreement between the parties on essential contract terms and, therefore, did not constitute a sufficient writing to satisfy the statute of frauds."  *Id.*  As the Court in *Wagers* found, this Court has already held that there are several material terms upon which the parties did not reach agreement.  Dkt. 130.  These material terms include: environmental indemnity provisions, payment of the sales tax, issues surrounding earnest money, who pays the real estate brokers' commissions, and others.  *Id.*  Even if the quote from *Wagers* is good law, in this case, the terms of any agreement were not reasonably established in any writing.

Plaintiffs have a motion pending for certification of an order for appeal.  Dkt. 171.  Plaintiffs argue, in part, that this Court did not properly identify the material terms of a cash sale of real property in the state of Washington.  *Id.*  Plaintiffs have not shown that the terms identified by the Court in the Order on Abitibi's Motion for Partial Summary Judgment Dismissing Specific Performance Claims were not material in the circumstances here.  For example, all parties have acknowledged that the environmental condition of the property was a significant factor and that environmental indemnity was an important component of the deal.  The record indicates, and the prior order found that parties did not agree on the environmental indemnity.  Dkt. 130.  Plaintiffs have not shown that the parties here had a meeting of the minds on all material terms.

The Court acknowledges that the Statute of Frauds may be satisfied by one writing or several writings.  *Berg v. Ting,* 125 Wash. 2d 544, 569 (1995); *Hunt v. Great Western Bank,* 774 P.2d 554,

ORDER - 9

1   54 Wash. App. 571, 573 (1989); *Wagers v. Associated Mortg. Investors*, 577 P.2d 622, 19 Wash.

2   App. 758 (1978).  Under the facts here, however, the email from a real estate agent to a title

3   company, referencing "the signed Letter of Intent," which did not exist, is simply insufficient.

4                c.    *Ms. Minville's Email of October 18, 2006 as Acceptance of the Letter of Intent*

5

6           Plaintiffs now argue that Ms. Minville's October 18, 2006 email also constituted an

    acceptance of the offer in the Letter of Intent and was sufficient to satisfy the Statute of Frauds.
7
    Dkt. 173, at 18.  Although unclear from the record, the email appears to refer to a proposed meeting
8
    between people from Abitibi and the Washington State Department of Ecology.  Dkt. 97, at 17.
9
    Equally unclear is the identity of M. Pors, or that person's role in this matter.  The email states, in
10
    relevant part,
11

12           Bonjour M. Pors:

13           Thank you for your email.  We are indeed interested in participating in the meeting via
             conference call or to a wrap-up meeting after.  I will have limited availabilities
14           tomorrow but will be reachable via email.  I've copied Mike McCartney who is legal
             counsel with ELT, our purchaser for the West Tacoma site, should also participate or
15           [be] able to designate someone else who will.

16           Regards,
             Alice Minville

17   Dkt. 97, at 17.  Like the July 27, 2006 email from Ms. Herzog, no reasonable jury could conclude

18   that Ms. Minville's October 18, 2006 email constituted an acceptance of the Letter of Intent.  A

19   question of fact may be determined as a matter of law where reasonable minds could reach but one

20   conclusion.  *Keystone Land and Development Co. v. Xerox Corp.*, 152 Wn.2d 171, 178 n.10 (2004).

21   It in no manner references the Letter of Intent, and does not state that it operates as an acceptance of

22   the Letter of Intent.  Plaintiffs have not pointed to any evidence in the record that Ms. Minville

23   intended to accept the Letter of Intent when she sent the email.  It is not an acknowledgment that

24   Abitibi has assented to the terms of the Letter of Intent.  In fact, the email apparently references

25   further negotiations, not a final agreement.

26   ORDER - 10

1

           d.    *Ms. Minville's Email of October 18, 2006 and the Statute of Frauds*

2

      Plaintiffs have failed to show that this email satisfies the Statute of Frauds.  There is no

3

evidence that the Letter of Intent is in any manner connected with this email.  Ms. Minville's email of

4

October 18, 2006 does not satisfy the Statue of Frauds.

5

      **3.**    **Conclusion**

6

      Plaintiffs have failed to show that the parties objectively manifested their mutual assent to

7

terms which were sufficiently definite.  *Keystone* at 177-8 .  The requirements of the Statute of

8

Frauds were not met.  Plaintiffs' contract claim should be dismissed.

9

    **C.**    **CLAIM FOR VIOLATIONS OF THE IMPLIED COVENANTS OF GOOD
              FAITH AND FAIR DEALING**

10

11

      In Washington, "there is no 'free-floating' duty of good faith and fair dealing that is

12

unattached to an existing contract.  The duty exists only 'in relation to performance of a specific

contract term.'" *Keystone Land & Development Co. v. Xerox Corp.*, 152 Wash.2d 151, 176 (2004).

13

The Plaintiffs were unable to establish that there were issues of fact as to whether the parties had an

14

existing contract for the sale of the property.  Accordingly, Plaintiffs' claim for violation of the

15

implied covenants of good faith and fair dealing should be dismissed.

16

           **III.**    **ORDER**

17

      Therefore, it is hereby, **ORDERED** that:

18

19

•    Abitibi's Motion for Partial Summary Judgment Dismissing Plaintiffs' First Claim for

       Relief and Third Claim for Relief (Dkt. 142) is **GRANTED**;

20

21

•    Plaintiff's claim for breach of contract and violations of the implied covenants of good

       faith and fair dealing are **DISMISSED**; and

22

23

•    The Clerk of the Court is directed to send uncertified copies of this Order to all

       counsel of record and to any party appearing *pro se* at said party's last known

24

       address.

25

26

ORDER - 11

1    DATED this 13ᵗʰ day of May, 2008.

2

3

4    ROBERT J. BRYAN
     United States District Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26   ORDER - 12