1

2

3

4

5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

COMMERCIAL DEVELOPMENT
COMPANY, a Missouri corporation;
ENVIRONMENTAL LIABILITY
TRANSFER INC., a Missouri corporation; and
WASH PAPER LLC, a Missouri Washington
limited liability company as assign,

        Plaintiffs,

    v.

ABITIBI-CONSOLIDATED INC., a foreign
corporation, and VANESSA HERZOG,
individually and her marital community,

        Defendants,

—————————————————

VANESSA HERZOG, individually and her
marital community,

        Intervenor Plaintiff,

v.

COMMERCIAL DEVELOPMENT
COMPANY, a Missouri corporation;
ENVIRONMENTAL LIABILITY
TRANSFER INC., a Missouri corporation; and
WASH PAPER LLC, a Missouri Washington
limited liability company as assign,

        Defendants in Intervention.

Case No. C07-5172RJB

FINDINGS OF FACT AND
CONCLUSIONS OF LAW ON
ABITIBI-CONSOLIDATED INC.'S
COUNTERCLAIMS

23

24

25

26

      This matter comes before the Court pursuant to the Order Re: Dismissal of Plaintiffs' Claims
and Submission of Defendant's Counterclaims to the Court.  Dkt. 191.  The Court has considered
the pleadings filed in favor of and in opposition to the counterclaims and the file herein.

ORDER - 1

## I.     FACTS AND PROCEDURAL BACKGROUND

Plaintiffs originally filed this action on March 21, 2007, in Pierce County, Washington Superior Court, alleging Abitibi-Consolidated Inc. ("Abitibi") wrongfully refused to sell commercial real property located in Steilacoom, Washington to Plaintiffs. Dkts. 1, 25, and 97. The subject property is approximately 84 acres and was a former paper mill site. *Id*.

The relevant events are recounted at length in this Court's Order Granting Abitibi's Motion for Partial Summary Judgment Dismissing Specific Performance Claims (Dkt. 130, at 2-7) and in the Order Granting Abitibi's Motion for Partial Summary Judgment Dismissing Plaintiffs' First Claim for Relief and Third Claim for Relief (Dkt. 180, at 2-5), and are incorporated herein by this reference.

### A.     ADDITIONAL FACTS

The Court finds that some additional procedural and basic facts, not included in the Orders summarily dismissing the claims for specific performance, breach of contract and violation of the duty of good faith and fair dealing (Dkts. 130 and 180), are relevant.

#### 1.     *Additional Procedural Facts*

Plaintiffs' claim for specific performance was dismissed on April 1, 2008. Dkt. 130. On April 30, 2008, Plaintiffs filed a motion for certification of an interlocutory appeal of the order dismissing the specific performance claim. Dkt. 171. Plaintiffs' breach of contract claim and claim for violations of the implied covenants of good faith and fair dealing were dismissed on May 13, 2008. Dkt. 180. All claims made by and against Intervenor Plaintiffs were dismissed by May 14, 2008. Dkt. 184. Plaintiffs filed a notice of release of *lis pendens* on May 15, 2008. Dkt. 187.

On May 19, 2008, the Court entered an order granting the stipulation of the remaining parties: 1) to dismiss Plaintiffs' surviving claims for relief, 2) to strike Plaintiffs' motion for certification of an interlocutory appeal, and 3) to rule on Defendant's counterclaims for Wrongful Filing of *Lis Pendens* and Slander of Title upon the written briefs of the parties and, if the Court

ORDER - 2

chooses, oral argument.  Dkt. 191.  Parties have submitted their briefing, and the claims are ripe for

decision.  The Court finds no need for oral argument.

2.    *Additional Basic Facts*

Plaintiffs point out that they received expert advice in deciding to file a complaint which

sought specific performance and in deciding to file a Notice for *lis pendens*.  Plaintiffs offer the

advice given by their first trial counsel, Bradley Thoreson, and the opinion of Richard Griswold in

support of their argument.  While the Court disagrees with the opinions stated by these individuals,

there seems to be no doubt that Plaintiffs received and acted upon the advice received from them.

Review of the facts surrounding the advice and opinions is as follows:

a.    First Counsel

On March 13, 2006, Mike McCartney, Vice President and general counsel for Plaintiffs,

contacted attorney Bradley Thoreson, of Foster Pepper, "to compel enforcement of a purchase

agreement."  Dkt. 50, at 1.  Mr. Thoreson states that,

> Based upon [his] review of the facts and [his] research of the law, state and federal,
> [he] concluded that Plaintiffs had a reasonable and good faith argument for the
> existence of an enforceable and binding contract for the purchase and sale of the
> [property].  Based upon this good faith belief, [he] also concluded that [Abitibi], by
> its conduct, breached the binding contract. [He] provided Michael McCartney with
> [his] legal conclusions regarding Washington law on contract formation, statute of
> frauds, and the remedy of specific performance.

Dkt. 203, at 2.  Mr. Thoreson states that to protect Plaintiffs' interests, he drafted and filed the

Complaint and Notice of *Lis Pendens*.  *Id*.  Mr. Thoreson felt that "urgency was required due to the

unresponsiveness of [Abitibi] and information that the property may be subject to imminent sale to

another party."  *Id*.  Mr. Thoreson further states that,

> From March 14, 2007 until November 15, 2007, [he] continued to believe Plaintiffs
> had a reasonable basis under state and federal law to enforce the transaction and to
> take title to the [property].  [He] made no guarantee to the Plaintiffs that they would
> prevail, but [he] advised the Plaintiffs they had a reasonable basis under the law and
> facts to file the Notice of *Lis Pendens* and Complaint demanding specific
> performance.

Dkt. 203, at 3.

ORDER - 3

1      On November 15, 2007, Intervenor Plaintiffs' motion to disqualify Mr. Thoreson and the

2    Foster Pepper law firm was granted.  Dkt. 62.  Plaintiffs were given thirty days to secure new

3    counsel.  *Id.*  On December 14, 2007, Jeffrey Ring and Travis Hall filed a Substitution of Counsel

4    and appeared on behalf of Plaintiffs.  Dkt. 64.

5                          b.      Real Estate Expert

6      On February 15, 2008, Mr. Robert Griswold provided a preliminary expert report to Plaintiffs

7    regarding the standards of care, standards of practice and/or custom of commercial real estate

8    transactions.  Dkt. 213-2, at 6-12.  Mr. Griswold reserved the right to confirm, modify or change his

9    opinions.  Dkt. 213-2, at 10.  Mr. Griswold then stated that he felt that the Letter of Intent contained

10   "all of basic terms" of the parties' agreement.  *Id.* at 11.  In support of their brief opposing

11   judgment for Abitibi, Plaintiffs offer an additional Declaration from Mr. Griswold (Dkt. 200) which

12   adds nothing to the Court's analysis here, but shows disagreement with the Court's decision.

13                          c.      Current Counsel

14     Furthermore, although the Court also disagreed with the opinions and arguments of current

15   counsel of record, there seems no doubt that Plaintiffs acted on the advice of counsel throughout the

16   life of the questioned *lis pendens*.

     **B.      SUMMARY OF THE ARGUMENT**

17     Abitibi argues that it is entitled to judgment on it's counterclaim brought pursuant to RCW

18   4.28.328 (3) because:  1) Abitibi has prevailed in its "defense of the action in which the *lis pendens*

19   was filed," 2) Abitibi has sustained actual damages caused by the filing of the *lis pendens*, and 3)

20   Plaintiffs can not meet their burden of establishing a substantial justification for filing the notice of *lis*

21   *pendens*.  Dkts. 194, 209, and 210.  Abitibi argues that it is entitled to judgment on it's counterclaim

22   brought pursuant to RCW 4.28.328 (2) because:  1) this action was not one which "affected title to

23   real property" before the complaint was amended on July 10, 2007  to add a claim for specific

24   performance, and after the claim for specific performance was dismissed on April 1, 2008; 2) Abitibi

25   has prevailed on its motion to cancel the notice of *lis pendens*, and 3) Plaintiffs are liable for

26   ORDER - 4

1   attorneys' fees and costs under RCW 4.28.328 (2).  *Id.*  Abitibi argues that its actual damages were

2   its holding costs of the property, attorneys fees, and costs.  *Id.*

3       Plaintiffs respond, arguing that they are not liable to Abitibi under RCW 4.28.328 because:

4   1) Abitibi did not prevail on a motion to cancel the *lis pendens*, 2) Plaintiffs were substantially

5   justified in filing the *lis pendens*, 3) Plaintiffs had a reasonable good faith basis to believe it had a

6   contract with Abitibi for the purchase of the property, 4) Plaintiffs had a reasonable, good faith basis

7   to believe that the agreement satisfied the statute of frauds, 5) Plaintiffs had a reasonable good faith

8   basis that its contract with Abitibi contained all the terms necessary to obtain specific performance,

9   6) cases where damages were awarded pursuant to RCW 4.28.328 differ from the current case, and

10  7) Abitibi's own behavior and the views of one of its real estate lawyers demonstrate that Plaintiffs

11  had substantial justification.  Dkts. 196, 206, and 212.

12      As to Abitibi's counterclaim for slander of title, Plaintiffs argue: 1) any statements made by

13  Plaintiffs with regard to title to the property are subject to an absolute privilege, and 2) even if some

14  of the statements made by Plaintiffs are not privileged, Abitibi cannot show that Plaintiffs published

15  any statements with malicious intent.  *Id.*

16      Abitibi files an opposing brief, and moves to strike:  1) the testimony offered by attorney

17  Bradley Thoreson, 2) the undisclosed opinion of Robert Griswold, and 3) the undisclosed opinion

18  testimony offered by Plaintiffs' owner Michael J. Roberts.  Dkt. 209.

19      This opinion will first address Abitibi's motion to strike, then Abitibi's counterclaims under

20  RCW 4.28.328(2), RCW 4.28.328(3), and lastly the slander of title counterclaim.

## II.   DISCUSSION

### A.   ABITIBI'S MOTION TO STRIKE

21      Abitibi first moves to strike the testimony of Bradley Thoreson of Foster Pepper because it

22  alleges that Plaintiffs did not disclose that he would be a witness.  *Id.*, at 4.  Abitibi argues that, to

23  the extent Plaintiffs offer his testimony as expert testimony, it should also be stricken because he was

24  not properly disclosed as an expert witness.  Mr. Thoreson was Plaintiffs' initial trial counsel who

ORDER - 5

1  was disqualified from representing Plaintiffs on November 15, 2007.  Dkt. 50, at 1.

2          Abitibi's Motion to Strike Mr. Thoreson's testimony should be denied.  His testimony is not

3  offered and has not been considered as an expert witness's testimony.  *See* p. 3 *infra*, and Dkt. 212.

4  As to his use as a fact witness, Abitibi opened the door to the use of Mr. Thoreson's testimony in its

5  opening brief.  Dkt. 194, at 9.  It can not be said to be prejudiced by Plaintiffs' use of his testimony in

6  rebuttal.

7          Abitibi moves to strike a portion of the testimony of Robert Griswold.  Dkt. 209, at 5.

8  Abitibi argues that his opinion that he or another experienced broker could draft closing documents

9  from the Letter of Intent and Purchase and Sale Agreement (Dkt. 200, at 2), was undisclosed and is

10  contrary to the Court's ruling that "no closing escrow agent or lawyer could reasonably draft closing

11  documents from the Letter of Intent.  *See* p.4 *infra*, and Dkts. 200, at 2 and 130, at 15.

12          Abitibi does not complain that Mr. Griswold was not disclosed as an expert in a timely

13  manner, but that his opinion on this issue was not timely disclosed.  The record indicates that Mr.

14  Griswold indicated in his initial report that he reserved the right to confirm, modify or change his

15  opinions.  Dkt. 213-2, at 10.  Mr. Griswold then stated that he felt that the Letter of Intent contained

16  "all the of basic terms" of the parties' agreement.  *Id*. at 11.  Plaintiffs point out that Abitibi decided

17  not to depose Mr. Griswold about his expected testimony.  Dkt. 212, at 6.  Abitibi can not now

18  complain of an opinion about which Abitibi could have questioned him.  Abitibi's motion to strike

19  Mr. Griswold's testimony should be denied, although his opinions are of scant assistance to the

20  Court.

21          Lastly, Abitibi moves to strike the testimony of Michael J. Roberts, one of Plaintiffs' owners,

22  because he was not timely disclosed as an expert witness.  Dkt. 209, at 5.  Mr. Robert's testimony

23  was offered, not as an expert witness, but in his capacity as owner of Plaintiffs, and so is a fact

witness.  Abitibi's motion to strike Mr. Robert's testimony should be denied.

24

25

26  ORDER - 6

**B.**     **COUNTERCLAIM FOR WRONGFUL FILING OF THE *LIS PENDENS***

The Washington *lis pendens* statute provides, in relevant part:

> In an action in a United States district court for any district in the state of Washington affecting the title to real property in the state of Washington, the plaintiff, at the time of filing the complaint, or at any time afterwards, . . . if the same be intended to affect real property, may file with the auditor of each county in which the property is situated a notice of the pendency of the action. . . . And the court in which the said action was commenced may, in its discretion, at any time after the action shall be settled, discontinued or abated, on application of any person aggrieved and on good cause shown and on such notice as shall be directed or approved by the court, order the notice authorized in this section to be canceled, in whole or in part, by the county auditor of any county in whose office the same may have been filed or recorded, and such cancellation shall be evidenced by the recording of the court order.

RCW 4.28.325.  RCW 4.28.328 provides two alternative ways for an aggrieved party to recover actual damages and attorneys fees from the wrongful filing of a *lis pendens*.  Abitibi's right to relief under each will be discussed in turn.

        1.     *Liability Under RCW 4.28.328 (2)*

The first, RCW 4.28.328 (2), provides,

> A claimant in an action not affecting the title to real property against which the *lis pendens* was filed is liable to an aggrieved party who prevails on a motion to cancel the *lis pendens*, for actual damages caused by filing the *lis pendens*, and for reasonable attorneys' fees incurred in canceling the *lis pendens*.

Parties do not dispute that for the purposes of this statute, Abitibi is the "aggrieved party" and Plaintiffs are the "claimants."

        a.     Whether the Action Affected Title to the Property from March 23, 2007 to July 10, 2007

Abitibi argues that it is entitled to damages under RCW 4.28.328 (2) because until Plaintiffs amended their complaint on July 10, 2007, they had not identified specific performance as a potential claim, and so the action did not affect the title to the property.  Plaintiffs' original Complaint did not identify specific performance as relief sought, but made a more general statement "for such other and further relief as the Court deems just and equitable."  Dkt. 2-3, at 14.  Under Fed. R. Civ. P. 8, the complaint is to be construed in a liberal manner.  *See Sagana v. Tenorio,* 384 F.3d 731, 736 (9th Cir. 2004).  Liberally construing the complaint, and in light of the circumstances at the time, the action

1    was one which may have affected title to the property when it was filed on March 23, 2007.

2    Defendants do not deny that they had "fair notice of the claim and its basis." *Id.* Moreover,

3    Plaintiffs moved on May 15, 2007 to amend the complaint to specify that they were seeking specific

4    performance. Dkt. 14. Abitibi has not shown that the action did not affect title to the property from

5    March 23, 2007 to July 10, 2007. Accordingly, Abitibi is not entitled to relief under this provision of

6    the statute for the period of March 23, 2007 to July 10, 2007.

7            b.      Whether the Action Affected Title to the Property from April 1, 2008
                    to May 15, 2008

8            Abitibi argues that Plaintiffs are liable to Abitibi for damages and fees for the period of time

9    after the specific performance claims were dismissed to the time when Plaintiffs released the *lis*

10   *pendens*. In order to recover actual damages and attorneys' fees under the statute, an aggrieved

11   party must "prevail" on a motion to cancel the *lis pendens*. RCW 4.28.328 (2). Plaintiffs' claim for

12   specific performance was dismissed on April 1, 2008. Dkt. 130. On April 30, 2008, Plaintiffs filed a

13   motion for certification of an interlocutory appeal of the order dismissing the specific performance

14   claim. Dkt. 171. Plaintiffs' breach of contract claim and claim for violations of the implied

15   covenants of good faith and fair dealing were dismissed on May 13, 2008. Dkt. 180. Plaintiffs filed

16   a notice of release of the notice of *lis pendens* two days later. Dkt. 187. On May 19, 2008, based

17   on the parties stipulation, Plaintiffs' motion for certification of an interlocutory appeal was stricken.

18   Dkt. 191.

19           Plaintiffs' argument that they are not liable under RCW 4.28.328 (2), because they

20   voluntarily released the *lis pendens*, and so Abitibi did not "prevail on a motion" to cancel it is

21   unavailing. Abitibi successfully defeated the claims, under which, if successful, Plaintiffs could have

22   acquired title to the property. Abitibi had a motion pending to cancel the *lis pendens* (Dkt. 161) at

23   the time Plaintiffs released the notice. Abitibi prevailed on a motion to cancel the *lis pendens*.

24           However, no final judgment has been entered in this case. At the time Plaintiffs voluntarily

25   removed the *lis pendens* notice, they had a motion pending before the Court for certification of an

26   interlocutory appeal on the order dismissing the specific performance claim. This motion was not

ORDER - 8

1  stricken until after Plaintiffs removed the notice. Abitibi argues that if Plaintiffs "were truly serious"

2  about preserving their right to seek reversal of the Court's specific performance ruling they would

3  have posted a supersedeas bond. Dkt. 209, at 19. Whether Plaintiffs choose to file a bond or not

4  does not change the fact that they still sought specific performance, and so the action was still one

5  which affected title to the property.

6      Abitibi has not shown that Plaintiffs are liable under RCW 4.28.328 (2). Abitibi's

7  counterclaim, brought pursuant to RCW 4.28.328 (2) should be dismissed.

8          2.      *Liability Under RCW 4.28.328 (3)*

9      The second manner in which an aggrieved party may recover actual damages from the

10  wrongful filing of a *lis pendens* is RCW 4.28.328 (3). Under RCW 4.28.328 (3),

11      Unless the claimant establishes a substantial justification for filing the *lis pendens*, a
       claimant is liable to an aggrieved party who prevails in defense of the action in which
       the *lis pendens* was filed for actual damages caused by filing the *lis pendens*, and in

12      the court's discretion, reasonable attorneys' fees and costs incurred in defending the
       action.

13
       For Plaintiffs to avoid judgment in favor of Abitibi on the *lis pendens* counterclaim, Plaintiffs

14  must only demonstrate that they had a "substantial justification for filing the *lis pendens*." *Keystone*

15  *Land and Development Co. v. Xerox Corp.*, 353 F.3d 1070, 1075 (9th Cir. 2003).          Abitibi

16  argues that under Washington law, "substantial justification" must be judged from an **objective**

17  perspective. Dkt. 209, at 6 (*emphasis added*)(*citing Richau v. Rayner*, 98 Wn.App. 190 (1999)). In

18  *Richau*, the Washington State Court of Appeals, Division II, found that the plaintiffs there did not

19  have substantial justification for the filing of a *lis pendens*. *Id*. In that case plaintiffs "admitted they

20  knew the deed . . . only conveyed the reconfigured lots 7 and 8 to them, and they did not present any

21  evidence that they had a legal right to the property designated as lot 10. Rather, they relied on their

22  'belief' the property would revert to them." *Id*. at 198. After the decision in *Richau*, *Keystone Land*

23  *and Development Co. v. Xerox Corp.*, 353 F.3d 1070, 1075 (9th Cir. 2003) was decided by the

24  Ninth Circuit, a further discussion of which follows. After *Keystone* was decided, the Washington

25  State Court of Appeals then filed its opinion in *South Kitsap Family Worship Center v. Weir,* 135

26  ORDER - 9

Wash.App. 900 (2006).   The *Weir* Court held that in cases brought pursuant to RCW 4.28.328, "[d]amages and fees are appropriate where the claimants provide no evidence of a legal right to the property.  But where the claimants have a reasonable, good faith basis in fact or law for believing they have an interest in the property, a *lis pendens* is substantially justified." *Id.,* at 912 (*citing Richau v. Rayner,* 98 Wash.App. 190, 198, 988 P.2d 1052 (1999); *Keystone,* at 1075; and *Udall v. T.D. Escrow Servs., Inc.,* 132 Wash.App. 290, 303 (2006)).

As mentioned above, *Keystone Land and Development Co. v. Xerox Corp.*, 353 F.3d 1070 (9th Cir. 2003) was decided by the Ninth Circuit and is binding authority.  In *Keystone*, the plaintiff, a land developer, alleged the defendant breached two binding contracts, one allowing the plaintiff to buy a building owned by the defendant and the other to negotiate the terms of a purchase and sale agreement.  *Keystone* at 1071.  The plaintiff alleged that the contracts arose from a series of letters exchanged between the parties' brokers.  *Id*. at 1072.  The Ninth Circuit first addressed whether summary judgment was appropriate on the plaintiff's claim that the defendant breached a contract to sell the property.  *Id*. at 1073.  The Court found that the evidence in the record did not support a finding of an intent to form a binding contract to sell the property in what the Court termed were "the preliminary exchange of views."  *Id*. The Court held that when it examined the four letters in context, in a light most favorable to the plaintiff, there was no "basis from this evidence for a rational jury to find that [plaintiff] and [defendant] had entered into a contract to sell the building."  *Id*. at 1075.  The Appellate Court affirmed the district court's grant of summary judgment in favor of the defendant on the claim for breach of contract for the sale of the building.  *Id*.  The operative facts of *Keystone* in regard to contract formation are surprisingly similar to those of the instant case, and give us basically parallel facts from which to consider the *lis pendens* issues.

The *Keystone* Court went on to address the district court's grant of summary judgment in favor of the defendant's counterclaim for the wrongful filing of a *lis pendens*.  *Id*.  The Court held that plaintiff had to show that it had "substantial justification" in order to defeat summary judgment. *Id*.  The district court found that plaintiff should have known that the alleged contract violated the

1   statute of frauds, and so the plaintiffs did not have "substantial justification" for the filing of the

2   notice of *lis pendens*. *Id*.

3        The Ninth Circuit Court reversed. *Id*. It noted that in the state of Washington, a party may

4   be estopped from raising the statute of frauds, where it promised, either implicitly or explicitly, to

5   make a memorandum of a contract and then breaks that promise. *Id*. Although the Court held that

6   no rational jury could find the parties had entered a contract, it found that in the circumstances there,

7   the plaintiff had a "good faith position" that if there were a contract from the letter exchange, that

8   the defendant may have been estopped from relying on the statute of frauds. *Id*. The *Keystone*

9   Court also recognized that Washington law requires a higher showing to award the remedy of

10  specific performance of a breached land contract as opposed to an award of monetary damages. *Id*.,

11  at 1076 n. 6. The Court noted that it was "arguable" as to whether the asserted contract met all the

12  necessary requirements for specific performance. *Id*. However, the Court noted that the plaintiff

13  provided evidence from an escrow agent that "the letters contain[ed] all the essential terms required

14  to complete closing of the sale." *Id*. The *Keystone* Court went on to conclude that even if the

15  plaintiff might not have "prevailed at trial in gaining specific performance, it had sufficient chance so

16  that substantial justification existed for filing the *lis pendens*." *Id*. The *Keystone* Court concluded,

17  despite the fact that no reasonable jury could conclude that a contract had been formed, plaintiff had

18  substantial justification for the filing of the *lis pendens*. *Id*. at 1076.

19        The Court acknowledges that the *Keystone* Court utilizes a standard which includes an

20  element of subjective good faith in examining Plaintiffs' "substantial justification" for the filing of the

21  *lis pendens*. The *Keystone* Court's standard is not inconsistent with prior or later announcements of

22  the Washington State Court of Appeals, and in any event, this Court is bound by the holding in

23  *Keystone*.

24        In light of the Ninth Circuit's holding in *Keystone*, this Court is bound to find that Plaintiffs

25  here had "substantial justification" for the filing of the *lis pendens*. As was the case in *Keystone*,

26  there was not sufficient evidence in the record here to support Plaintiffs' arguments that the parties

ORDER - 11

had a binding contract to force the sale of the property.  However, a reasonable party in Plaintiffs'
position, would have "a good faith basis in fact or law for believing they have an interest in the
property."  *Weir*, at 912.  Like in *Keystone*, Plaintiffs here filed suit and the *lis pendens* upon the
advice of counsel.  The record includes the Declaration of Bradley Thoreson, Plaintiffs initial trial
counsel, who informed them that they had a "good faith basis" to pursue their claims for specific
performance and to file the notice of  *lis pendens.*  Dkt. 203, at 3.  Mr. Thoreson is a licensed
attorney in the state of Washington, and is in good standing.  Moreover, as was the case in *Keystone*,
Plaintiffs provided evidence that their expert, Mr. Griswold, opined that the Letter of Intent
contained all the essential terms of the parties' agreement.  The Court believes that the opinions
given by Mr. Thoreson and Mr. Griswold were not correct, but the Court does find that a reasonable
party, in Plaintiffs' position, given this advice of experts, would have a "good faith belief" such that
the decision to file the notice of *lis pendens* was substantially justified.

Abitibi additionally argues that Plaintiffs were not substantially justified in filing the notice,
because no reasonable party could conclude that the statute of frauds was met or that the parties had
agreed to all material terms.

a.   Statute of Frauds

Abitibi points to this Court's ruling that "no reasonable jury could conclude" that the July 27,
2006 email from Ms. Herzog constituted a written signature to the Letter of Intent (Dkt. 130, at 11)
and so the statute of frauds was not met.  Abitibi argues that in light of the fact that requirements of
the statute of frauds were not met, Plaintiffs then were not substantially justified in filing the notice.
The ruling to which Abitibi refers was issued on Abitibi's motion for summary judgment on the
specific performance claims.  *Id.*  Abitibi argued that Plaintiffs were unable to show that they had a
contract which was specifically enforceable due to the statute of frauds.  *Id.*  In response, Plaintiffs
pointed to the email from Ms. Herzog as an electronic signature to the Letter of Intent, particularly
in light of the alleged oral agreement to the Letter of Intent by Mr. Gartshore.  *Id.*  The Court cannot
say that Plaintiffs did not have a "reasonable good faith basis" in law or fact to argue that the statute

ORDER - 12

1   of frauds was met in the circumstances. *Weir*, at 912. The *Keystone* Court noted that the "relevant

2   question for *lis pendens* liability is whether [the plaintiff] had 'substantial justification' for filing the

3   *lis pendens*, not whether the underlying claim would necessarily succeed." *Id.*, at 1075.

                              b.        Agreement on Material Terms

4

5        Abitibi also argues that Plaintiffs did not have substantial justification to file the notice of *lis*

6   *pendens* because parties had not agreed on several material terms, therefore the contract could not be

7   specifically enforced.

8        As was the case in *Keystone*, this Court cannot say that Plaintiffs did not have a "reasonable

9   good faith basis" in law or fact to argue that the parties had agreed on the material terms in the

10  circumstances. *Id.; Weir*, at 912. Plaintiffs argue that the material terms could be constructed from

11  the Letter of Intent and the Purchase and Sale Agreement. Although in the end, this Court found

12  that the parties did not agree on all material terms of the contract, Plaintiffs had a "sufficient chance"

13  such that "substantial justification existed for the filing of the *lis pendens*." *Keystone*, at 1076 n. 6.

14       The Washington Court of Appeals has held that RCW 4.28.328 was "created primarily in

15  response to common law pro se litigants who file lis pendens to harass public officials and others."

16  *Richau v. Rayner*, 98 Wn.App. 190, 198 (1999). The results announced here are not inconsistent

17  with the legislative purpose of RCW 4.28.328. Abitibi has not shown that Plaintiffs are liable under

18  RCW 4.28.328 (3). Abitibi's counterclaim, brought pursuant to RCW 4.28.328 (3) should be

19  dismissed.

    **C.        COUNTERCLAIM FOR SLANDER OF TITLE**

20

21       In Washington, a claim for slander of title involves five elements: "1) false words, 2)

22  maliciously published, 3) with reference to some pending sale or purchase of property, 4) which go

23

24

25

26  ORDER - 13

1  to defeat [the property owner's] title, and 5) result in [the property owner's] pecuniary loss." *Rorvig*
2  *v. Douglas*, 123 Wash.2d 854, 859 (1994).

3      Abitibi has not pointed to sufficient evidence in the record to find that Plaintiffs acted
4  maliciously. "The element of malice is met when the slanderous statement is not made in good faith
5  or is not prompted by a reasonable belief in its veracity." *Rorvig,* at 860. There is no evidence in the
6  record that statements made during these proceedings were not made in good faith. There is no
7  evidence that statements made here were prompted by anything other than a "reasonable belief in
8  their veracity." Abitibi has not shown that they are entitled to a judgment on its counterclaim for
9  slander of title. This claim should be dismissed.

### IV.   ORDER

10     Therefore, it is hereby, **ORDERED** that:
11  •   Abitibi's Motion to Strike (Dkt. 209) is **DENIED**;
12
13  •   Abitibi has not shown that it is entitled to actual damages, attorneys' fees or costs
14      under RCW 4.28.328 (2) or RCW 4.28.328 (3); Abitibi's counterclaims pursuant to
15      RCW 4.28.328 (2) and RCW 4.28.328 (3) are **DISMISSED**;
16  •   Abitibi has not shown that it is entitled to a judgment for its slander of title
17      counterclaim; Abitibi's slander of title counterclaim is **DISMISSED**;
18  •   This case is **DISMISSED**; and
19  •   The Clerk of the Court is directed to send uncertified copies of this Order to all
20      counsel of record and to any party appearing *pro se* at said party's last known
21      address.

     DATED this 17th day of June, 2008.

                                    *Robert J Bryan*
                                    ROBERT J. BRYAN
                                    United States District Judge

26  ORDER - 14